1  H. MICHAEL BRUCKER LAW
   CORPORATION
2  H. MICHAEL BRUCKER (#36297)
   5855 DOYLE STREET, SUITE 110
3  EMERYVILLE, CA  94608
   Telephone:  (510) 654-6200
4  Facsimile:  (510) 654-6166
   E-Mail:  michael@hmblawoffice.com
5
   STEVEN M. KIPPERMAN LAW
6  CORPORATION
   STEVEN M. KIPPERMAN (#40895)
7  57 Post Street, Suite 604
   San Francisco, CA  94104
8  Telephone:  (415) 397-8600
   Facsimile:  (415) 397-0792
9  E-Mail:  kipperman@aol.com

10  Counsel for Defendant Smith News Company,
    Inc.

11                    UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
12

13  KAROL WESTERN CORP.,              Case No.  CV12- 7695 BRO (VBKx)

14              Plaintiff,            Defendant's Motion in Limine No. 1

15  vs.                              Hearing:  January 13, 2014
                                     Time:  1:30 PM
16  SMITH NEWS COMPANY, INC.          Place:  Courtroom 14
    dba SMITH NOVELTY COMPANY
17                                    Complaint Filed:  Sept. 7, 2012
            Defendant.                Trial Date:  January 21, 2014
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**A.   ANY OPINION OFFERED BY MR. SEDLIK REGARDING SUBSTANTIAL  SIMILARITY WOULD ONLY CONFUSE AND MISLEAD THE JURY** ................................................................. 1

**B.   ROTH AND McCULLOCH ARE NO LONGER GOOD LAW AS PERTAINS TO THE TEST FOR SUBSTANTIAL SIMILARITY AND DO NOT ACCURETLY STATE THE 9TH CIRCUIT TEST FOR SUBSTANTIAL SIMILARITY IN THIS CASE** ..........................................7

**C.   CONCLUSION** .......................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Affiliated Enterprises v. Gruber*, 1 Cir., 86 F.2d 958, 961 (1 Cir. 1936) ............... 13

*Aliotti v. R. Dakin & Co.,* 831 F. 2d 898 (9th Cir. 1987) ................. 1, 2, 8, 10, 11, 15

*Apple Computer v Microsoft*, 35 F.3d 898 (9th Cir. 1994) ................................. 2, 14

*Aurora World v. Ty, Inc.*, 719 F. Supp. 2d 1115,1137 (C.D. Cal. 2009) ............... 13

*Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222,  (C.D. Cal. 1997)........................................................................................................ 10, 13

*Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 77 F.2d 485, 493 (9th Cir. 1985),........................................................................................... 8

*Data East USA, Inc. v. Epyx, Inc.*, 862 F. 2d 204 (9th Cir. 1988)................. 2, 10, 11

*De Montijo v. 20th Century Fox Film Corp.*, 40 F. Supp. 133, 138 (S.D. Cal. 1941)......................................................................................... 13

*Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 US 340 (1991) ........................................................................................................... 2

*Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F. 2d 197 (9th Cir. 1989 ................................................................................................... 2, 9, 12

*Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F. 2d 738, 9th Cir 1971* ........................................................................................... 10, 14

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.* 345 F.3d 1140 (9th Cir. 2003)............................................................................................... 16

*Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F. 3d 904, 913 (9th Cir. 2009)............................................................................................... 3, 14

*Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 1047, fn 5 (DC, CD CA 2011)........................................................................... 3, 15

*McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 321 (9th Cir. 1987) ............... 1, 8

*Metcalf v. Bocho*, 294 F. 3d 1069, 1062 (9th Cir. 2002)......................................... 14

*Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051 (9th Cir. 2008) .................................................................... 7

*Pasillas v. McDonald's Corp.*, 927 F. 2d 440 (9th Cir. 1991)......................... 10, 12

*Rice v. Fox Broadcasting Co.*, 330 F. 3d 1170 (9th Cir. 2003)............................. 14

*Roth Greeting Cards v. United Card Company*, 429 F. 2d 1106 (9th Cir. 1970).......................................................................................... 1

*Satava v. Lowry*, 323 F. 3d 805 (9th Cir. 2003) ............................................ 2, 3, 10

1

**STATUTES**

2
17 U.S.C. § 101 ...................................................................... 3, 5

3
17 U.S.C. § 102(b) .................................................................. 3

4

**RULES**

5

Fed. R. Evid. 401-402 ............................................................. 7

6
Fed.R.Evid. 702 ...................................................................... 1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT MOVES THE COURT FOR AN ORDER PROHIBITING PLAINTIFF'S DESIGNATED EXPERT, MR. SEDLIK, FROM TESTIFYING AS TO HIS OPINIONS REGARDING SIMILARITY, SUBSTANTIAL SIMILARITY OR STRIKING SIMILARITY[1]**

**A.    Any Opinion Offered By Mr. Sedlik Regarding Substantial Similarity Would Only Confuse and Mislead the Jury**

Fed.R.Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Based on Mr. Sedlik's Expert Report[2] and his deposition testimony[3], Mr. Sedlik's testimony at trial will not meet the standards of any one of Fed.R.Evid. 702 sub parts for the following reasons.

(1)    Mr. Sedlik expects to opine at trial on the question of substantial similarity between two products:  Plaintiff's flask and Defendant's flask.[4]

(2)    <u>Mr. Sedlik Applied The Wrong Standard</u>

At his deposition (taken after the motions for Summary Judgment and Partial Summary Judgment were decided), it was revealed that Mr. Sedlik arrived at his opinions regarding similarity, substantial similarity and striking similarity without knowing the difference between these three measures nor their legal implications[5]

---

[1] Section B below tracks the changes in the 9th Circuit's analysis for substantial similarity over the past 40 plus years and how that development has forsaken *Roth Greeting Cards v. United Card Company*, 429 F. 2d 1106 (9th Cir. 1970) and *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 321 (9th Cir. 1987) and instead embraced the analysis of *Aliotti v Dakin*, 831 F. 3d 898 (9th Cir. 1987) and its progeny requiring that all unprotectable elements of a work be filtered out and not considered in determining substantial similarity.
[2] Brucker Declaration Exhibit 1 (Sedlik Expert Report)
[3] Brucker Declaration Exhibit 2 (partial transcript of Sedlik deposition)
[4] Brucker Declaration Exhibit 1 (Sedlik Expert Report, p.1); Brucker Declaration Exhibit 2, pp. 19-24.
[5] Id. at pp 19-24, 59-62

Def's.Motion in Limine No. 1                    1                    Case No. CV12-7695 BRO (VBK)

and without following the analysis for determining substantial similarity mandated by controlling 9th Circuit case law cited immediately below.

Mr. Sedlik was unaware that "substantial similarity" differs from "similarity" in that to be "substantial", the similarity must reside in protectable expression alone. *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987); *Data East v. Epyx*, 862 F.2d 204 (9th Cir. 1998); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F. 2d 197 (9th Cir. 1989); *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 US 340 (1991); *Apple Computer v Microsoft*, 35 F.3d 898 (9th Cir. 1994); *Satava v. Lowry*, 323 F. 3d 805  (9th Cir. 2003); *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F. 3d 904, 913 (9th Cir. 2009); *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 1047, fn 5 (DC, CD CA 2011).

Being so uninformed and unaware, Mr. Sedlik made no attempt to distinguish between protectable expression and unprotectable elements in arriving at his opinions[6], contrary to the requirement that all unprotectable elements of a work be filtered out and that similarity be based solely on the original protectable expression, if any, that remains.[7]  *Id.*  In fact, Mr. Sedlik admitted that his opinions of "substantial similarity" were not meant to meet any legal standard.[8]

*Harper House, Inc. v. Thomas Nelson, Inc.*, *supra*, not only confirms the "filter/exclusion" test to identify and exclude unprotectable material from the work at issue – which, in that case, was a daily organizer, but *Harper* makes it "black letter law" that the trier of fact cannot base an infringement decision on unprotectable aspects of plaintiff's work.  The case holds that the process of filtering and excluding unprotectable material from the substantial similarity inquiry is so fundamental to a proper outcome that the failure of the trial court to

---

[6] Brucker Declaration Exhibit 1 (Sedlik Report) pp. 18-19, Brucker Declaration Exhibit 2, pp. 82-83.
[7] Even if Plaintiff's work is viewed as a non-pleaded compilation, identification of uncopyrightable elements is relevant, especially where the number of elements is relatively few. *Satava v. Lowry*, 323 F. 3d 805 (9th Cir. 2003); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.* 345 F.3d 1140 (9th Cir. 2003).

point out the work's unprotectable material in its instructions to the jury is error requiring the reversal it ordered. *Id.* at 208. The court makes no reference to *Roth* or *McCulloch.*

Since *Harper* requires the court to instruct the jury as to what is unprotectable material and that such material is not to be considered in determining substantial similarity, it follows that the jury can only be confused and misled by an opinion of Mr. Sedlik's arrived at without any filtration and by including material clearly unprotectable by copyright (i.e., ideas – a die cut image of the Las Vegas Sign; useful article – flask; mechanical or utilitarian aspects of a work of craftsmanship - placement of work on the flask, how and where glitter paper is attached to a flask and the fact that the underlying surface of the flask shows through; material traceable to common sources or in the public domain – glitter paper, the Las Vegas Sign; elements of expression that are indispensable or standard in the treatment of an idea – the various elements of the Sign that make it look like the Sign; elements of expression that necessarily follow from an idea or are standard in the treatment of a given idea (*scenes a faire*) - the various elements of the Sign that make it look like the Sign. [9]

Furthermore, Mr. Sedlik was either unaware or chose not to consider in his analysis that useful articles are excluded from copyright protection and that only designs that can exist independently of and separate from a useful article can claim copyright. (17 U.S.C. § 101.) He was also unaware or chose not to consider in his analysis that: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." (17 U.S.C. § 102(b.)) His opinions can only confuse the jury because they are arrived at by an analysis that is contrary to that required by the 9th Circuit and thus are legally irrelevant.

[8] Brucker Declaration Exhibit 2 (partial transcript of Sedlik deposition) p. 23.

1  Moreover, the comparison he makes is between useful articles (flasks)[10], as he so

2  testified:

3                    Page 23

4            25    Q    Okay.  And what exactly were you asked to

5                    Page 24

6       1    compare?

7       2      A    I was asked to compare the two flasks and to

8       3    opine on the similarities and differences between the

9       4    two flasks.

10      5      Q    Okay.  In your declaration you say that you

11      6    were asked to analyze and opine on the question of

12      7    substantial similarities between the designs appearing

13      8    on the respective flasks.  Is that more accurate?

14      9      A    With the clarification that the application of

15     10    this fabric with the die cut onto the flasks itself

16     11    forms the design of the product because the reflective

17     12    quality of the underlying flask is an integral part of

18     13    the -- of the design.

19     14     So when you say "design," I would not be

20     15    referring to, let's say, the sign -- the abstract,

21     16    stylized sign image considered independently from its

22     17    application to the flask.  **I would be opining on the**

23     18    **flask design in its totality**.

24           (Emphasis added)

25          One could hardly imagine a more candid admission of having conducted an

26    analysis of the "wrong" works in view of the statutory provision that: " . . . the

27    design of a useful article, as defined in this section, shall be considered a pictorial,

28    ─────────────────────────────
      [9] Brucker Declaration Exhibit 1 (Sedlik Report), pp. 18-20

graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article . . . (17 U.S.C. § 101).  (Emphasis added.)

As a result of this misunderstanding, Mr. Sedlik's analysis includes minute descriptions of physical details of the flasks (useful articles) including dimensions and surface material.  He also includes in his evaluation the flask cover material, where on the flasks The Sign images are positioned (centered), the process by which the images are executed (die cut) and how the cover material is affixed to the flasks[11], none of which are elements of the graphic designs at issue and none of which are subject to copyright protection.  His conclusions are thus legally irrelevant considering the underlying controlling legal principles, because the useful article (flask design in its entirety) is not the work.  To permit Mr. Sedlik to opine on the similarities between two flasks amounts to nothing more than a legal argument that the flask is indeed the protected work.  This is contrary to the statutory exclusion of useful articles from copyright protection[12] and the limitation to those designs that can "be identified separately from, and are capable of existing independently" of a useful article.[13]  It also ignores applicable Ninth Circuit law requiring the "filtering out" of *un*protectable elements before making any comparison about substantial similarity.[14]

Since Mr. Sedlik's analysis was conducted, and his opinions arrived at, by comparing the wrong things and without any filtering out of unprotectable material, his testimony is legally irrelevant and can only confuse and mislead the jury who

---

[10] For which Plaintiff has no copyright registration.
[11] Brucker Declaration Exhibit 1 (Sedlik Report) p. 18-19.
[12] 17 U.S.C. §101.
[13] *Id.*
[14] See Section B below.

are required to be instructed as to what materials of a work are unprotectable[15] and which cannot be considered in determining the issue of substantial similarity. Certainly, it will not be helpful, as required by 702(a).

The Ninth Circuit recently reviewed expert testimony that mixed factual statements with legal assumptions. In *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051 (9th Cir. 2008), the Ninth Circuit affirmed a verdict in a commercial tort case where the trial court had excluded or limited proffered "expert" testimony. Citing (at p. 1058) the well-settled rule that

> As a general rule, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Fed. R. Evid. 704(a)*. "That said, an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.  Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal citations and quotation marks omitted); *see also Fed. R. Evid. 702* (requiring that expert opinion evidence "assist the trier of fact to understand the evidence or to determine a fact in issue")

The court agreed with the trial court that the putative expert's report contained "numerous legal conclusions" and that much of the proffered testimony was properly excluded.  Likewise, in the case at bench, Sedlik's proffered testimony assumes numerous legal conclusions (and erroneous ones at that) about *what is protectable* when he makes his comparisons using elements that are not protectable. To allow such testimony would be tantamount to allowing Sedlik to tell the jury that it *may* consider elements that *Harper House* requires this court to instruct them to filter *out* and not consider before making a comparison.  *Nationwide Transport* put it thus:

> Zadek's legal conclusions not only invaded the province of the trial judge, but constituted erroneous statements of law.  In such a case, "[e]xpert testimony .

---

[15] "Given the extremely limited protection that Harper House's organizers receive, the jury instructions covering copyright infringement liability did not adequately distinguish between protectable and unprotectable material. *Harper House, supra*, at 208.

. . would have been not only superfluous but mischievous." *Brodie, 858 F.2d at 497*. Accordingly, the district court did not abuse its discretion in its ruling out Zadek's testimony and report.

To allow Mr. Sedlik to offer his opinions based on irrelevant and improper facts (such as unprotectable elements of the works) violates both the principle that the court determines the law and *Harper Houses's* (and other cases') requirement of filtering out unprotectable elements before making the similarity comparison. To allow Sedlik to put them back in the comparison would also waste time and hopelessly confuse the jury about what it should do, which would be prejudicial to Defendant, Fed. R. Evid. 403, and irrelevant, Fed. R. Evid. 401-402.

**B.   Roth[16] and McCulloch[17] Are No Longer Good Law as Pertains to the Test for Substantial Similarity and Do Not Accurately State the 9th Circuit Test for Substantial Similarity in this Case[18]**

The one pervading elemental prerequisite to copyright protection is originality[19]; but not all originality results in copyright protection.[20]

---

[16] *Roth Greeting Cards v. United Card Company*, 429 F. 2d 1106 - Court of Appeals, 9th Cir. 1970.
[17] *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 321 (9th Cir. 1987).
[18] Professor Nimmer explains it this way: "Exceptions within exceptions have become a standard feature in audience test jurisprudence. In *Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 77 F.2d 485, 493 (9th Cir. 1985), the Ninth Circuit stated, 'What is important is not whether there is substantial similarity in the total concept and feel of the works, [citation] but whether the very small amount of protectable expression in [plaintiff]'s catalog is substantially similar to the equivalent portions of [defendant]'s catalog.' Two years after that decision, the same court held *Cooling Systems* inapplicable to artistic works, ruling that even uncopyrightable material could be considered in evaluating substantial similarity. *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 321 (9th Cir. 1987). Shortly thereafter, however, the Ninth Circuit limited its limitation of *Cooling Systems*: 'Although even unprotectable material should be considered when determining if there is substantial similarity of expression, see *McCulloch*, 823 F.2d at 320-21, no substantial similarity may be found under the intrinsic test where analytic dissection demonstrates that all similarities in expression arise from the use of common ideas.' *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987). It would seem that *Feist* demands, at a minimum, *Aliotti's* limitation of *McCulloch*." **Nimmer on Copyrights, Vol. 4, § 13.03(E)(1)(b).**
[19] Id at §2.01 ft nt 2.
[20] 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.")

---

The authored works that qualify for copyright protection are narrowly drawn in order to maintain the delicate balance between rewarding authors and maintaining our society's historic philosophy fostering freedom of competition.

In service of this delicate balance, the 9th Circuit has, over the past 40 plus years, refined its test for substantial similarity.  Today, the 9th Circuit requires that all unprotectable elements of a work be filtered out, that the jury be told what is not protectable, and that similarity be based solely on the original expression of protectable subject matter, if any, that remains.[21]

Material (original or not) not protectable by copyright includes any:

a.      idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in a work;[22]

b.      useful article, except to the extent that such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article;[23]

c.      mechanical or utilitarian aspects of a work of craftsmanship;[24]

d.      material traceable to common sources or in the public domain[25];

e.      elements of expression that are indispensable or standard in the treatment of an idea;[26]

f.      elements of expression that necessarily follows from an idea or are standard in the treatment of a given idea - *scenes a faire*[27]

g.      expression that merges with the idea of the work.[28]

---

[21] *Feist Publications,. v. Rural Telephone Service Co.*, Inc., 499 US 340 (1991); *Satava v Lowry*, supra; *Apple Computer v. Microsoft*, 35 F.3d 898 (9th Cir. 1994); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F. 2d 197 (9th Cir. 1989)
[22] 17 U.S.C.§ 102(b).
[23] 17 U.S.C.§ 101.
[24] Id.
[25] *Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222, 1226 (C.D. Cal. 1997)
[26] *Pasillas v. McDonald's Corp.*, 927 F. 2d 440, 443 (9th Cir. 1991)
[27] *Aliotti v Dakin*, 831 F. 3d 898 (9th Cir. 1987); *Data East v. Epyx*, 862 F.2d 204 (9th Cir. 1998); *Satava v Lowry, supra*; *Landsberg v Scrabble*, 736 F. 2d 485 (9th Cir. 1984).
[28] *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F. 2d 738, 9th Cir 1971; *Data East, supra*

The subjective determination of substantial similarity in copyright cases, like the determination of obviousness in patent cases and likelihood of confusion in trademark cases, has spawned an evolving jurisprudence in search of a formula that produces results that comport with the mandate of Article I § 8 of the Constitution,[29] yet not grant competition stifling monopolies.

When such formulas have produced results that would not promote "the progress of science [or] the useful arts" by granting unwarranted monopolies, they have eventually been rejected, as have been *Roth* and *McCulloch*.

In the more than 40 years since *Roth*, the 9th Circuit has refined the algorithm for determining substantial similarity to more nearly achieve the delicate balance between rewarding authors and maintaining our society's historic philosophy requiring freedom of competition. The formula that has evolved in the 9th Circuit is no longer that implemented by the majority in *Roth* - rather what has evolved is more closely aligned with the opinion of the *Roth* dissenter, Circuit Judge Kilkenny.

Boiled down to its essence, the formula used in *Roth* allows admittedly unprotected elements of a work (certain graphics on greeting cards in that case) to be considered in determining substantial similarity.[30]

In 1987, seventeen years after *Roth*, the court decided *Aliotti v. R. Dakin & Co.,* 831 F. 2d 898 (9th Cir. 1987) and employed a formula for deciding substantial similarity that, unlike *Roth,* called for filtering out all unprotecable elements of the

---

[29] "*To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries*"; see also, *Satava v. Lowry*, 323 F3d 805, 807 (9th Cir. 2003) ("In the Copyright Act, Congress sought to benefit the public by encouraging artists' creative expression. Congress carefully drew the contours of copyright protection to achieve this goal. It granted artists the exclusive right to the original expression in their works, thereby giving them a financial incentive to create works to enrich our culture. But it denied artists the exclusive right to ideas and standard elements in their works, thereby preventing them from monopolizing what rightfully belongs to the public." (underline added).

[30] Id, at 1111.

stuffed toy dinosaurs at issue[31] from the elements to be considered: "However, our finding that there exists no substantial similarity of protectable expression makes appellants' argument inapplicable . . .") Id at 902.  (Emphasis added.)  This limitation on *Roth* was necessary in order to prevent *Aliotti* from having a monopoly on all cuddly, stuffed animal dinosaurs.

A year after *Aliotti*, in 1988, the 9th Circuit decided *Data East USA, Inc. v. Epyx, Inc.*, 862 F. 2d 204 (9th Cir. 1988), and without any reference to *Roth*,[32] implemented the formula of *Aliotti* and proceeded to filter and eliminate from the determination of substantial similarity all elements from the karate video game at issue that were unprotectable.  *Data East* holds that when ideas and expression merge, that expression cannot be considered; where expression necessarily follows from an idea or is standard in the treatment of a given idea - *scenes a faire* - that expression cannot be considered.  *Data East* confirmed the formula calling for analytic dissection of similarities and filtering out from consideration those similarities in expression that arise from unprotectable material.  Otherwise *Epyx* would have had a monopoly on all karate-based video games.

The next year, 1989, the court decided *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F. 2d 197 (9th Cir. 1989), confirming the "filter/exclusion" test to identify and exclude unprotectable material from the daily organizers at issue.  The court makes it "black letter law" that the trier of fact cannot base an infringement decision on unprotectable aspects of plaintiff's work.  The case holds that the process of filtering and excluding unprotectable material from the substantial similarity inquiry is so fundamental to a proper outcome that the failure of the trial court to point out the work's unprotectable material in its instructions to the jury is error requiring a reversal.  The court made no reference to *Roth* or *McCulloch*.

---

[31] While *Aliotti* cites *McCulloch*, it proceeds with an analysis that clearly ignores *McCulloch's* use of unprotected material in determining substantial similarity.
[32] Rather the court relied on *Aliotti* and a 7th Circuit case relied on by *Aliotti*.

1    In 1991, the court decided *Pasillas v. McDonald's Corp.*, 927 F. 2d 440 (9th

2  Cir. 1991), and in deciding the similarity, *vel non*, of masks, expressly cited and

3  followed *Aliotti* and *Data East* in stating that ". . . no copyright protection is

4  afforded to elements of expression that are indispensable or standard in the

5  treatment of an idea."  Once these nonprotectable elements were taken out of the

6  calculus for finding substantial similarity, there was a finding of no similarity.  *Id* at

7  443.

8    In 1994, the court decided *Apple Computer v. Microsoft Corp.*, 35 F. 3d 1435

9  (9th Cir. 1994), once again confirming the by-then well accepted requirement for

10  filtering stating:  "As we made clear in *Aliotti*, the party claiming infringement may

11  place 'no reliance upon any similarity in expression resulting from' unprotectable

12  elements."  The court went on to conclude that the accusing computer graphical

13  user interfaces (GUI's), stripped of its unprotectable elements, was not substantially

14  similar.

15    In 1997, in *Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222,  (C.D.

16  Cal. 1997), the court specifically included "common source material" on the list of

17  unprotectable material:  "[C]opyright protection does not extend to ... material

18  traceable to common sources or in the public domains, and *scenes a faire.*"  "Where

19  common sources exist for the alleged similarities . . . there is no infringement.").

20  (Internal cites omitted.) *Id.* at 1226.

21    The limitation excluding copyright protection for common source material

22  was not new with *Chase-Riboud v. Dreamworks, Inc.* See *De Montijo v. 20th

23  Century Fox Film Corp.*, 40 F. Supp. 133, 138 (S.D. Cal. 1941) ("'One work does

24  not violate the copyright in another simply because there is a similarity between the

25  two, <u>if the similarity results from the fact that both works deal with the same

26  subject or have the same common sources.</u>")  Citing *Affiliated Enterprises v.

27  Gruber*, 1 Cir., 86 F.2d 958, 961 (1 Cir. 1936).  (Underline added.)

28

1       In 2009, the court in deciding *Aurora World v. Ty, Inc.*, 719 F. Supp. 2d

2   1115,1137 (C.D. Cal. 2009), involving plush toys, stated that the requirement of

3   Plaintiff to prove "copying of constituent elements of the work that are original":

4   "The latter element may be established by showing the works in question are

5   'substantially similar in their <u>protected</u> elements'. . ." [ emphasis added, citing

6   *Metcalf v. Bocho*, 294 F. 3d 1069, 1062 (9th Cir. 2002)]. See also, *Rice v. Fox*

7   *Broadcasting Co.*, 330 F. 3d 1170 (9th Cir. 2003) for similar language.

8       In that same year, the court decided *Mattel, Inc. v. MGA Entertainment, Inc.*,

9   616 F. 3d 904, 913 (9th Cir. 2009), further confirming the requirement that

10   unprotectable material be filtered out where it states: "To distinguish between

11   permissible lifting of ideas and impermissible copying of expression, we have

12   developed a two-part "extrinsic/intrinsic" test. *See Apple Computer, Inc. v.*

13   *Microsoft Corp.,* 35 F.3d 1435, 1442 (9th Cir.1994). At the initial "extrinsic" stage,

14   we examine the similarities between the copyrighted and challenged works and then

15   determine whether the similar elements are protectable or unprotectable. *See id.* at

16   1442-43. For example, ideas, scenes a faire (standard features) and unoriginal

17   components aren't protectable. *Id.* at 1443-45. When the unprotectable elements

18   are "filtered" out, what's left is an author's particular expression of an idea, which

19   most definitely *is* protectable. "

20       The court in *Mattel, supra,* paints a vivid picture of the difference between an

21   idea and its expression where it states: "Assuming that Mattel owns Bryant's

22   preliminary drawings and sculpt, its copyrights in the works would cover only its

23   particular expression of the bratty-doll idea, not the idea itself. *See Herbert*

24   *Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738, 742 (9th Cir. 1971).

25   Otherwise, the first person to express any idea would have a monopoly over it.

26   Degas can't prohibit other artists from painting ballerinas, and Charlaine Harris

27   can't stop Stephenie Meyer from publishing *Twilight* just because Sookie came first.

28

1    Similarly, MGA was free to look at Bryant's sketches and say, 'Good idea! We

2    want to create bratty dolls too'".

3        It follows, SNCO was free to look at KWC's flask and say, "Good idea! We

4    want to put a die cut image of The Sign on souvenirs too".

5        In 2011, the trial court decided a follow up to *Mattel, supra*, in *Mattel, Inc. v.*

6    *MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 1047, fn 5 (DC, CD CA 2011) and

7    confirmed that *Aliotti*, not *Roth*, provided the correct formula for deciding

8    substantial similarity where it states:   "A comparison of protectable elements [of

9    the dolls in issue], as opposed to the works as a whole, ensures that unprotectable

10   expression does not form the basis for a determination of substantial similarity,

11   thereby "confer[ring] a monopoly of the idea upon the copyright owner. *Aliotti v. R.*

12   *Dakin & Co.*, 831 **F.2d** 898, 901 (9th Cir. 1987).  Because the intrinsic test was

13   designed to compare expression, the Ninth Circuit initially held that an analytical

14   dissection of similarities 'properly may be assimilated within the analytical

15   framework of the intrinsic test.' *Id.*  However, <u>the Ninth Circuit now requires that</u>

16   <u>the analytical dissection take place at the extrinsic stage</u>." (Emphasis added.)

17       While *Roth* and *McCulloch* may not have been expressly overturned, the

18   current accepted formula for determining substantial similarity in the 9th Circuit

19   has moved beyond those cases and now requires a much more nuanced approach.

20   In both of those cases, the court employed a formula that allowed acknowledged

21   unprotectable material to be considered by the jury in determining substantial

22   similarity, which is clearly no longer the law.  It is no longer an acceptable formula

23   and, if used, requires reversal.[33]

24       In attempting to reframe its "work" from "2-D artwork" to an arrangement of

25   largely unprotectable elements of a useful article, Plaintiff is asking the court to rely

26   on *Roth* and ignore the development of 9th Circuit copyright jurisprudence over the

27

28

[33] See *Harper House, supra.*
Def's.Motion in Limine No. 1              13            Case No. CV12-7695 BRO (VBK)

1  past 40 years as it pertains to the determination of substantial similarity.  *Roth* is no

2  longer good law on the subject and to follow it would be error.

3      All of the development of 9th Circuit law as it pertains to a formula for the

4  determination of substantial similarity would be for naught if it could be swallowed

5  up by simply reframing the work as one based on an original arrangement of

6  elements; protectable and unprotectable.  No 9th Circuit case since *Roth* and

7  *McCulloch* has allowed such an avoidance tactic.  Both *Satava v. Lowry*, 323 F. 3d

8  805 (9th Cir. 2003); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.* 345 F.3d 1140

9  (9th Cir. 2003) have outright rejected it.

10 **C.    Conclusion**

11      Not only would Mr. Sedlik's testimony not be helpful, it would be

12 pernicious.  Being ignorant of the difference between similarity and substantial

13 similarity and of what is protectable and what is unprotectable, his opinions cannot

14 be based on the standards that the 9th Circuit has set for determining substantial

15 similarity.  Allowing him to testify under these circumstances would signal to the

16 jury that they could use the same defective formula.  The potential prejudice to

17 Defendant is manifest.

18

19 Dated:  December 16, 2013

20                      H. Michael Brucker Law Corporation
                        Steven M. Kipperman Law Corporation

21

22                      /S/
                        H. Michael Brucker Law Corporation

23                      H. Michael Brucker

24                      Counsel for Defendant

25

26

27

28