BRUNSTEN+ASSOCIATES
DONALD J. BRUNSTEN (SBN 90795)
8605 Santa Monica Blvd., Suite 32-425
Los Angeles, California 90069
E-Mail: dbrunsten@brunsten.com
Tel.: (310) 207-1660
Fax: (310) 442-4652

ISHIMATSU LAW GROUP, P.C.
BRUCE L. ISHIMATSU (SBN 86145)
4712 Admiralty Way, No. 1012
Marina Del Rey, California 90292
E-Mail: Bruce.Ishimatsu@gmail.com
Tel: (310) 200-4060
Fax. (310) 496-1540

Attorneys for Plaintiff **KAROL WESTERN CORP.**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAROL WESTERN CORP., a California Corporation<br><br>Plaintiff,<br><br>v.<br><br>SMITH NEWS COMPANY, INC. a California corporation d/b/a SMITH NOVELTY COMPANY<br><br>Defendant. | CASE NO. CV12-7695 BRO (VBKx)<br><br>PLAINTIFF'S MOTION IN LIMINE NO. 1: TO EXCLUDE DEFENDANT'S "INDEPENDENT CREATION" DEFENSE; DECLARATION NO. 1 OF BRUCE L. ISHIMATSU IN SUPPORT HEREOF<br><br>Hearing Date: March 3, 2014<br>Time: 1:30 p.m.<br>Dept.: Courtroom 14<br>Trial Date: March 25, 2014 |

1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT ON MARCH 3, 2014 at 1:30 p.m. or as soon thereafter as counsel can be heard in Courtroom No. 14 before the Honorable Beverly Reid O'Connell, located at 312 North Spring Street, Los Angeles, California 90012, plaintiff Karol Western Corporation ("Plaintiff") will move the court *in limine* for an order prohibiting defendant Smith News Company, Inc. d/b/a Smith Novelty Company ("Defendant") from introducing any evidence of, or arguing or otherwise suggesting, an "independent creation" defense to Plaintiff's claim of copyright infringement.

This Motion is based on the grounds that (i) Defendant's failure to assert an independent creation defense in its answers to Plaintiff's original and amended complaints precludes it from presenting the defense or any evidence of such a defense at trial pursuant to F.R.C.P. Rule 16 and Central District of California Local Rule 16-7.2 and Appendix "A"; (ii) new admissions obtained after this Court's August 23, 2013 Order on Plaintiff's motion for partial summary judgment demonstrates that as a matter of law Defendant cannot establish an independent creation defense; and (ii) this Court's determination in the August 23 Order that that there is no genuine issue of fact that Plaintiff's design and Defendant's design are "strikingly similar" operates as a matter of law to preclude an "independent creation" defense.

//
//
//
//
//

Plaintiff's Motion in Limine No 1 to Exclude Defendant's "Independent Creation" Defense

1   The Motion will be based on this Notice, on the accompanying Memorandum
2   of Points and Authorities, Declaration No. 1 of Bruce L. Ishimatsu in Support of
3   Plaintiff's Motion in Limine No. 1 and on all pleadings and records already on file in
4   this action and on such oral argument as the Court may permit at the hearing on the
5   Motion.

7   Dated:   January 31, 2014.          BRUNSTEN & ASSOCIATES
                                        ISHIMATSU LAW GROUP, P.C.

9                                       By   *Donald J. Brunsten*
                                        Donald J. Brunsten
10                                      Attorneys for Plaintiff
                                        KAROL WESTERN CORP.

3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

In opposition to Plaintiff's earlier summary judgment motion, Defendant asserted an unpleaded affirmative defense of "independent creation," based solely on the declaration of Enrico Urbiztondo, one of Defendant's staff artists. Mr. Urbiztondo claims he never personally saw the Shanghai Diamond, despite the now-admitted prior actual viewing of the Shanghai Diamond by Defendant's president Ken Glaser and other Smith Novelty employees.

The Court allowed in its August 23 Order that a genuine controversy existed as to "independent creation." However, under F.R.C.P. Rule 16, as implemented in C.D. Cal. Local Rules, Rule 16 and Appendix A, Defendant's failure to plead the affirmative defense of "independent creation" in any of its Answers in this action constitutes a waiver of the defense.

Moreover, an "independent creation" defense is legally negated by this Court's express finding in the August 23 Order that the Shanghai Diamond and Accused Work are "strikingly similar." "Striking similarity" legally means the two works are so close in overall appearance and expressive detail that the inference of copying becomes inescapable.

Finally, new admissions establish a fatal factual defect in an "independent creation" defense: It is now admitted, through deposition, that the material, overall design choices found in the Accused Work, particularly the visual effects of rendering a representation of the Las Vegas Sign through a die cut into glitter fabric and incorporating the underlying reflective metal substrate – indeed, the commercially significant combination of choices forming the basis for Plaintiff's

copyright infringement claim -- were selected and mandated by Mr. Urbiztondo's boss and the Defendant's president, Mr. Glaser.  Moreover, Mr. Glaser has now admitted that he was familiar with the successful Shanghai Diamond design many months before he selected the specific combination of design elements for the Accused Work.  Mr. Glaser also admits to approving the final overall design of the Accused Work for the Defendant after Mr. Urbiztondo had performed his one task, an ink-drawing, and before Defendant told its manufacturer to begin production of the flasks and tumblers.  So whatever minor "creative" choices Mr. Urbiztondo might have contributed, Mr. Glaser, with full knowledge of the Shanghai Diamond's appearance and success in the same stores where Defendant sells its products, blessed the Accused Work before it was sent to manufacture.

Accordingly, it is respectfully submitted that it is now necessary, fair, and in the interest of trial efficiency for the Court to remove the canard of "independent creation" from consideration by the jury.

## II.
## DEFENDANT IS PRECLUDED FROM OFFERING EVIDENCE OF ITS "INDEPENDENT CREATION" DEFENSE AT TRIAL

Appendix "A" to this Court's Local Rules sets forth the proper formatting and content for parties' Final Pretrial Conference orders and provides in pertinent part:

> "7. This section of the Final Pretrial Conference Order is intended to finalize, in advance of trial, the claims and defenses to be presented at trial. ***In accordance with F.R.Civ.P. 16(c), parties will be precluded from presenting . . . defenses not set forth in this order***, in the manner required by this order, unless the order is modified to prevent manifest injustice. ***Only . . . defenses contained in the . . . answer and any court***

> *authorized amendment or supplement may be included in this Final Pretrial Conference Order*." [Emphasis supplied.]
>
> Defendant plans to pursue the following counterclaims and affirmative defenses: [Insofar as defenses are concerned, Defendant should identify only affirmative defenses, which are those matters on which the Defendant bears the burden of proof. They are matters which would defeat Plaintiff's claim even if Plaintiff established the elements of the claim. Examples of such affirmative defenses –which must have been pleaded in Defendant's Answer –appear in F.R.Civ.P. 8(c)].

It is undeniable that Defendant bears the burden of proof to establish its newly found "independent creation" defense and that burden is substantial. [*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985), cert. denied, 474 U.S. 1059 (1986); *Gund, Inc. v. Russ Berrie and Co., Inc.*, 701 F. Supp. 1013, 1025 (S.D.N.Y. 1988) (defendant's evidentiary standard in making a *prima facie* case of independent creation is "strong, convincing and persuasive" evidence). *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 486 (9th Cir. 2000) (copyright plaintiff's establishment of access and substantial similarity raises presumption of copying and shifts burden to defendant to rebut presumption with evidence of independent creation).

Defendant failed to plead "independent creation" or *any* affirmative defenses in its Answer filed in response to the original Complaint on November 5, 2012. Plaintiff was later given leave to file an amended complaint in this action. Even after the hearing on the summary judgment motions on July 29, 2013, Defendant again failed to plead "independent creation" or *any* affirmative defenses in its Answer to Plaintiff's First Amended Complaint, filed on August 8, 2013. For the additional reasons outlined below, "independent creation" has always been a non-starter legally and factually. Clearly, by the time Defendant had filed its Answer to

the First Amended Complaint, Defendant had given up the ghost on "independent creation" as a real issue in this case. Undoubtedly for the same reasons, this Court's August 23 Order on the summary judgment motion did not spur Defendant to seek leave of court to amend its Answer.

## III.
## DEFENDANT CANNOT ESTABLISH AN INDEPENDENT CREATION DEFENSE AS A MATTER OF LAW

In concluding there was a triable issue of fact regarding Defendant's claim that it independently created the Accused Work, this Court referenced assertions in the sole piece of evidence Defendant offered in support of the claim – Mr. Urbiztondo's summary judgment declaration. Specifically, Urbiztondo asserted that "In 2011, I was asked to prepare a graphical representation of the Las Vegas Welcome Sign for use on a 7-inch tumbler and a 5-inch flask, both to be executed by a die cut process."

So the prior record already showed the Defendant's key creative choices, including use of glitter fabric and representation of the Las Vegas sign via a die cut to expose the metal substrate, came from someone other than Mr. Urbiztondo. After the summary judgment proceedings, the depositions of Mr. Glaser and Mr. Urbiztondo elicited admissions filling in the rest of the story.

For example, the following exchange in Glaser's deposition revealed why Urbiztondo's declaration omitted answers to these crucial questions while simultaneously striking a fatal blow to Defendant's so-called "independent creation" defense:

> "I'm going to have identified as Exhibit 2 a copy of what Karol Western calls the "Shanghai diamond design" that it started selling in September of 2009. It's designed for a flask with a

7

> glitter fabric, a die cut, and includes an interpretation or representation of the Las Vegas sign executed through that die cut.
>
> I'm going to show Exhibit 2 to you. Is that –
>
> [Objection omitted]
>
> Q. Is Exhibit 2 familiar to you?
>
> A. Yes.
>
> Q. And, again, without reference to particular colors, be it purple or black or silver or any other color, *when was the first time you saw a sample of Exhibit 2*?
>
> A. *I couldn't tell you the exact date, but it was before 2010*
>
> Q. Before 2010. So in other words –
>
> A. Yeah, it was before we –
>
> Q. Before –
>
> A. -- *before we came out with our flask*."
>
> [September 23, 2010 Deposition of Ken Glaser, Jr. ("Glaser Depo."], p. 74, line 1 to p. 75, line 4 (Emphasis supplied)]. [1]

Thus, not only did Glaser admit Defendant had access to the Protected Work but pinpointed that the access occurred before Defendant manufactured the Accused Work. Further undermining Urbiztondo's claims about his "authorship" of the

---

[1] All pages cited in this Memorandum from the deposition testimony of Ken Glaser Jr. are collectively attached as Exhibit "A" to the accompanying Declaration No. 1 of Bruce L. Ishimatsu.

8

Accused Work, and Defendant's claim to have "independently created" the Accused Work were these revelations in Glaser's testimony:

- Glaser saw samples of the Protected Work before October, 2010 most likely during business trips to Las Vegas [Glaser Depo., p. 73, line 25 to p. 75, line 13];

- Before October 2010, Defendant had never made or offered a design involving a die cut and glitter fabric as seen in the Protected Work [Glaser Depo., p. 69, line 10 to p. 70, line 19];

- the people involved in the creative choice in October 2010 to do a design in glitter fabric were himself, Brett Rankin and possibly Barbara Skinner with no mention of Urbiztondo [Glaser Depo., p. 72, lines 17-24];

- Glaser is intimately involved in Defendant's product development, creating new products and working with the company's art department [Glaser Depo., p. 18, lines 12-16];

- Glaser came up with the creative choices for Defendant's products as part of a collaborative effort [Glaser Depo., p. 18, line 22 to p. 19, line 4];

- Glaser controls every design Defendant sells and has personally approved 95% of Defendant's designs [Glaser Depo., p. 26, line 23 to p. 27, line 18]; and

- from beginning to end, Defendant's design of the Accused Work was a collaborative effort. Glaser Depo., p. 101, lines 9-11.

Similarly, Urbiztondo was forced to concede in deposition that (1) Glaser made suggestions to him about the choice of materials for particular designs [September 23, 2013 deposition of Enrico Urbiztondo ("Urbiztondo Depo."), p. 16,

lines 5-11][2]; (2) Glaser would comment on, suggest changes to and ultimately have final approval on Urbiztondo's artwork for a particular design [Urbiztondo Depo., p. 19, lines 8-16]; (3) before September, 2009, Defendant had never manufactured any products that used in some way a die cut [Urbiztondo Depo., p. 22, lines 10-13]; (4) Glaser directed him to create a design for a flask with a die cut and using glitter fabric [Urbiztondo Depo., p. 24, line 18 to p. 25, line 13]; and (5) he first created the die cut design incorporating glitter fabric in November, 2011.  Urbiztondo Depo., p. 28, line 6 to p. 29, line 5.

In Urbiztondo's Deposition, he established that Glaser would comment on, suggest changes to and ultimately have final approval on Urbiztondo's artwork for a particular design:

**p. 19, lines 8-16:**

```
8 Q. But I'm saying -- so Mr. Glaser, for example,
9 might comment to you on a design that -- artwork that
10 you've produced; correct?
11 A. Yes.
12 Q. And he might suggest changes of it?
13 A. Yes.
14 Q. Does he ultimately approve any artwork that goes
15 out to be manufactured?
16 A. Yes.
```

**p. 24, line 18 to p. 25, line 14:**

```
18 Q. Okay. Now, Exhibit 1 again, explain to me how
19 that -- what was told to you when you began to work on
20 that, on the design for that flask?
```

---

[2]   All pages cited in this Memorandum from the deposition testimony of Enrico Urbiztondo are collectively attached as Exhibit "B" to the accompanying Declaration No. 1 of Bruce L. Ishimatsu.

```
21 A. Ken went up to me and asked me to create a
22 design for Las Vegas.
23 Q. Okay. What else did he say?
24 A. He said to use our sign, to be placed on the
25 flask.
```

Further in his deposition, Urbiztondo testified that Glaser directed him to create a design for a flask with a die cut and using glitter fabric:

**p. 25, lines 1-14:**

```
1 Q. And did he tell you that he wanted it to be done
2 as a die cut?
3 A. Yes.
4 Q. And did he tell you also he would like it to be
5 done using glitter fabric as the material to be used
6 around the flask?
7 A. Yes.
8 Q. So what he communicated to you was that there
9 would be glitter fabric wrapped around the flask, you
10 would create an image or use an image of the sign, and --
11 so that it would be die cut and create the effect that's
12 shown there in Exhibit 1?
13 A. Yeah. I think he said -- he mentioned to use my
14 existing design to put on the flask.
```

Thus, Defendant's witnesses admit that (1) Glaser saw the Shanghai Diamond; (2) Defendant had never previously designed or manufactured products with the same design elements present in the Shanghai Diamond (3) Mr. Urbiztondo, at Mr. Glaser's direction, only rendered a standardized, 2D black-ink on paper drawing that led to one minor element of the overall design of of the Accused Work, the contour and lettering of the representation of the Las Vegas Sign; (4) the prominent creative choices in the Accused Work – the combination of glitter fabric

and a die cut rendition of the Las Vegas Sign to create an effect of depth and illumination -- came from Mr. Glaser; and (5) none of these prominent features in the Accused Work existed in any of Defendant's designs prior to Mr. Glaser's viewing of the Shanghai Diamond..

    Plaintiff respectfully submits that these new admissions render any "independent creation" defense by Defendant unavailable as a matter of law. Defendant's interest in focusing the jury's attention on what has now been revealed to be Urbiztondo's perfunctory and minor role in the design process of the Accused Work is part of a clear attempt to confuse the jury into believing the Plaintiff's work is only a line drawing of the Las Vegas Sign and does not include a highly specific, and unique, combination of visual ingredients seen in the work's best edition (i.e., the flask).

    Nor does Defendant's inclusion in the Accused Work of certain patterns it may have had on hand establish independent creation. While Urbiztondo may have made some use of existing designs as a pattern to create a new one-color line drawing of the ALVS, that does not explain the other creative choices Glaser and others made for the design such as rendering the sign abstractly and as a negative image, specific illumination and reflection effects as well as the use of a glittering purple color field. *See Gund, Inc. v. Russ Berrie and Co., Inc.*, 701 F. Supp. at 1023 (in creating the accused work defendant's artist may have "made some use of patterns on hand," but such use "does not negate the extremely strong inference" that the plaintiff's work was copied.)

Plaintiff's Motion in Limine No 1 to Exclude Defendant's "Independent Creation" Defense

## IV.

**<u>THIS COURT'S PREVIOUS DETERMINATION THAT THE PROTECTED WORK AND THE ACCUSED WORK ARE STRIKINGLY SIMILAR BARS DEFENDANT'S INDEPENDENT CREATION DEFENSE</u>**

In its earlier ruling on Plaintiff's motion for partial summary judgment, this Court determined that the Protected Work and the Accused Work were strikingly similar. Plaintiff respectfully submits that this finding operates as a matter of law to preclude Defendant from maintaining that it "independently created" the Accused Work considering that the case law is clear that one cannot "independently create" something that is strikingly similar to another party's product to which access has been established.

Here, the similarity is sufficiently striking to logically overwhelm the possibility of "independent creation." *Arrow Novelty Co., Inc. v. Enco National Corp.,* 393 F.Supp. 157, 160 (S.D.N.Y. 1974), *aff'd.* 515 F.2nd 504 (2d Cir. 1975) ("Defendant's expression of the idea, i.e., the specific layout and design of the tray, bears such a remarkable resemblance to plaintiff's expression of the idea as to render the inference of copying inescapable and the contention of independent creation unbelievable.") *La Resolana Architects, Pa v. Reno, Inc*., 555 F.3d 1171, 1179 (10th Cir., 2009) (Striking similarity exists when "the proof of similarity in appearance is `so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.')

## V.

## CONCLUSION

For all of the foregoing reasons, plaintiff Karol Western Corporation respectfully submits that this Motion in Limine be granted to preclude Defendant from attempting to introduce any testimony, evidence, argument or reference to "independent creation" at trial.

Dated:   January 31, 2014.       BRUNSTEN & ASSOCIATES
                                 ISHIMATSU LAW GROUP, P.C.

                                 By *Donald J. Brunsten*
                                 Donald J. Brunsten
                                 Attorneys for Plaintiff
                                 KAROL WESTERN CORP.