BRUNSTEN+ASSOCIATES
DONALD J.BRUNSTEN (SBN 90795)
8605 Santa Monica Blvd., Suite 32-425
Los Angeles, California 90069
E-Mail: dbrunsten@brunsten.com
Tel.: (310) 207-1660
Fax: (310) 442-4652

ISHIMATSU LAW GROUP, P.C.
BRUCE L. ISHIMATSU (SBN 86145)
4712 Admiralty Way, No. 1012
Marina Del Rey, California 90292
E-Mail:Bruce.Ishimatsu@gmail.com
Tel: (310) 200-4060
Fax. (310) 496-1540

Attorneys for Plaintiff **KAROL WESTERN CORP.**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAROL WESTERN CORP., a California Corporation<br><br>Plaintiff,<br><br>v.<br><br>SMITH NEWS COMPANY, INC. a California corporation d/b/a SMITH NOVELTY COMPANY<br><br>Defendant. | CASE NO. CV12-7695 BRO (VBKx)<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1<br><br>Hearing Date: March 3, 2014<br>Time: 1:30 p.m.<br>Dept.: Courtroom 14<br>Trial Date: March 25, 2014 |

Plaintiff Karol Western Corporation submits this opposition to Defendant's Motion in Limine No. 1 which seeks to exclude the trial testimony of Professor Jeff Sedlik, Plaintiff's designated expert witness.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant Smith News Company, Inc. dba Smith Novelty Company ("Defendant") has filed its Motion in Limine No. 1 seeking an order excluding any testimony by Plaintiff's designated expert witness, Professor Jeff Sedlik, on the grounds that (1) his testimony will be confusing and prejudicial and (2) his testimony is at odds with the 9th Circuit's standards for extrinsic substantial similarity.  Both arguments lack merit and, consistent with this Court's August 23 Order re summary judgment,[1] Professor Sedlik's testimony is meaningful and admissible at trial.

In conjunction with the effort to exclude the expert testimony, and despite this Court's August 23 Order, Defendant once again tries to suggest that the Shanghai Diamond has no protectable content.  Thus, it is claimed, Professor Sedlik's testimony about objective similarities between the Shanghai Diamond and Accused Work cannot be used to establish extrinsic substantial similarity because he has failed to "filter out," well, everything.  Defendant largely re-hashes the false arguments and inapposite cases this Court reviewed and rejected in the summary judgment proceedings.  Defendant inaccurately asserts that the holdings in *Roth Greeting Cards v. United Card Co.* and *McCulloch v. Albert E. Price, Inc.*,[2] to the

---

[1] Dkt. No. 57.

[2] The Court addressed this issue in detail in the August 23 Order. "Defendant and Plaintiff disagree about the relevant legal standard to apply when assessing the extrinsic component of the substantial similarity test. The Court agrees with Plaintiff, and applies the total concept and feel test of *Roth Greeting Cards v. United Card Co* when assessing the "articulable similarities" of the Shanghai Diamond and Defendant's Accused Work. 429 F.2d 1106, 1109 (9th Cir. 1970). In *Roth*, the Ninth Circuit held that a district court erred when it determined that a series of greeting cards was not protectable. 429 F.2d at 1109. The district court reasoned that the elements comprising the cards were not original. *Id*. The district court had improperly isolated the individual elements of

effect that copyright protection in a visual work extends to an original combination, selection or arrangement of individually unprotected design features and cited by this Court, ***are no longer valid*** in the Ninth Circuit in connection with the development of the extrinsic test of substantial similarity.   Of course, even Defendant is forced to point out that no subsequent case has overruled or criticized the pertinent holdings in *Roth* or *McCulloch*.   And there's a good reason why those cases have not been overruled:   Relatively recent 9th Circuit cases, including but not limited to *Swirsky v. Carey*, 376 F. 3d 841 (9th Cir. 2004) integrate the relevant holdings of <u>Roth</u> and *McCulloch* into the current extrinsic test of substantial similarity.   In other words, a*ny such original choice, combination or arrangement is, in itself, a copyright protected element of the work and therefore not to be "filtered out" in the extrinsic analysis*.

## DEFENDANT'S CONTENTIONS

- A work's original overall combination, selection or arrangement of design features cannot, in itself, be a copyright protected element of the work.
- Professor Sedlik makes an improper comparison of Plaintiff's Flask and Defendant's Flask.

---

the cards including: the textual matter, its arrangement, and its arrangement association with artistic representations. *Id*.    ….   According to the Ninth Circuit, a 'proper analysis of the problem require[d] that all elements of each card, including text, arrangement of text, art work, and association between art work and text, be considered as a whole.' *Id*. Similarly, in *McCulloch v. Albert E. Price, Inc.*, the Ninth Circuit held that the district court was required to assess all elements of the copyrighted plate. 823 F.2d 316, 321 (9th Cir. 1987) (internal quotations omitted). This included components that were not protectable, such as uncopyrightable text. *Id*. Ultimately, the elements of an artistic work should 'be considered as whole.' *Id*. *See also City Merch., Inc. v. Broadway Gifts Inc.*, 08CIV9075(RJS), 2009 WL 195941 (S.D.N.Y. Jan. 27, 2009) (holding that the unprotectable elements did not preclude a finding of originality and that a jury would likely find two works substantially similar because they both contained 'the same non-geometrical whimsical style of drawing, similar scales, similar methods of arrangement, and similar color schemes')."

- Professor Sedlik used legal conclusions in referencing "substantial similarity," and "striking similarity," though he was not trying to state legal conclusions. Further, it is asserted Professor Sedlik did not follow the analysis for determining extrinsic substantial similarity under 9th Circuit law, to wit, he made no attempt to distinguish between protectable expression and unprotectable elements of a work and thus did not apply the "filtration" step.

## RECENT 9TH CIRCUIT CASES CONFIRM THAT, AS IN *ROTH* AND *McCulloch*, A WORK'S ORIGINAL COMBINATION, SELECTION, OR ARRANGEMENT OF INDIVIDUALLY UNPROTECED ELEMENTS IS ITSELF A PROTECTED ELEMENT, AND IS NOT TO BE "FILTERED OUT" IN THE EXTRINSIC TEST

The easiest way to crystallize Defendant's fatuous position is with the following question:   If Defendant's explanation of the dissection and filtration process in testing for extrinsic substantial similarity is to be accepted, then how could any book written in English ever be copyrighted?   After all, (1) dissection of any book leads to individual words; (2) no individual word found in an English dictionary can be copyright protected; (3) any book is simply a series of individually unprotected words; so (4) when the individually unprotected words are filtered out, literally nothing is left.   As the cases actually point out, however, "dissection" cannot be taken to an extreme, because otherwise any type of work in any medium can be deconstructed into public domain parts.

This Court has already seen through Defendant's continuing canard: copyright case law is crystal clear that an original *combination, selection, and arrangement* of individually unprotected design features in a work of visual art (the principle would also apply to individually unprotected words in a book) *is itself a copyright protected element.*   In simplest terms, the case law says an original combination,

4
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1

selection and arrangement of individually unprotected design features *is not filtered out* under the extrinsic test, and if the defendant's work contains a similar combination, selection, and arrangement of design features, then extrinsic substantial similarity is established.   And *the burden is on defendant* to prove that the particular combination, selection, and arrangement of design features in the plaintiff's work is not original.

Defendant is prone to making bold statements that betray serious ignorance of the law, e.g., "all the development of 9th Circuit law as it pertains to the formula for the determination of substantial similarity would be for naught if it could be swallowed up simply by reframing the work as one based on an original arrangement of elements: protectable and unprotectable.   No 9th Circuit case since *Roth* and *McCulloch* has allowed such an avoidance tactic." [Defendant's Memorandum p. 14 l.3-7]   Defendant apparently missed the comparatively recent Ninth Circuit case of *Swirsky v. Carey,* 376 F.3d 841 (9th Cir. 2004) that specifically applied the prevailing 9th Circuit extrinsic test for substantial similarity as follows:

> "In determining whether two works are substantially similar, we employ a two-part analysis: an objective extrinsic test and a subjective intrinsic test. For the purposes of summary judgment, only the extrinsic test is important because the subjective question whether works are intrinsically similar must be left to the jury. See Rice I, 330 F.3d at 1174; Smith, 84 F.3d at 1218….
>
> "The extrinsic test considers whether two works share *a similarity of ideas and expression* as measured by external, objective criteria.[4] See, Smith, 84 F.3d at 1218. The extrinsic test requires 'analytical dissection of a work and expert testimony.' Three Boys, 212 F.3d at 485. 'Analytical dissection' requires breaking the works down into their

<a>
</a>

1  constituent elements, and comparing those elements for proof of copying
2  as measured by `substantial similarity.'" *Rice v. Fox Broad. Co.,* 148
3  F.Supp.2d 1029, 1051 (C.D.Cal.2001), *reversed on other grounds,* 330
4  F.3d 1170 (9th Cir.2003) (*Rice II*). Because the requirement is one of
5  substantial similarity to *protected* elements of the copyrighted work, it is
6  essential to distinguish between the protected and unprotected material in
7  a plaintiff's work. *See, Rice I,* 330 F.3d at 1174; *Apple Computer, Inc. v.*
8  *Microsoft Corp.,* 35 F.3d 1435, 1443(9th Cir.1994); *Brown Bag,* 960
9  F.2d at 1475-76." ….

"Music, like software programs ***and art objects***, is not capable of ready classification into only five or six constituent elements; music is comprised of a large array of elements, some combination of which is protectable by copyright.[15] For example, in *Three Boys* ***we upheld a jury finding of substantial similarity based on the combination of five otherwise unprotectable elements***: (1) the title hook phrase (including the lyric, rhythm, and pitch); (2) the shifted cadence; (3) the instrumental figures; (4) the verse/chorus relationship; and (5) the fade ending. *Three Boys,* 212 F.3d at 485" *Swirsky v. Carey*, supra, at 845-849 (Emphasis supplied).

In *Three Boys Music Corporation v. Bolton* 212 F.3d 477 (9th Cir. 2002) cited in *Swirsky*, the Ninth Circuit stated:

> "It is well settled that a jury may find a combination of unprotectible elements to be protectible under the extrinsic test because 'the over-all impact and effect indicate substantial appropriation.'" *Id.* at 1169 (quoting *Malkin v. Dubinsky,* 146 F.Supp. 111, 114 (S.D.N.Y.1956))." ….

> "On the contrary, Eskelin testified that the two songs shared a combination of five unprotectible elements: (1) the title hook phrase (including the lyric, rhythm, and pitch); (2) the shifted cadence; (3) the instrumental figures; (4) the verse/chorus relationship; and (5) the fade ending. Although the appellants presented testimony from their own expert musicologist, Anthony Ricigliano, ***he conceded that there were similarities between the two songs and that he had not found the combination of unprotectible elements in the Isley Brothers' song "anywhere in the prior art."*** The jury heard testimony from both of these experts and "found infringement based on a unique compilation of those elements." We refuse to interfere with the jury's credibility determination, nor do we find that the jury's finding of substantial similarity was clearly erroneous."
> *Three Boys*, supra, at 485-486 (Emphasis supplied.)

In *Cavalier v. Random House,* 297 F.3d 815 (9th Cir. 2002) the Ninth Circuit applied the same, prevailing extrinsic test and citing *McCulloch*, as this Court did, reversed a summary judgment for defendant in respect of the visual art work included in the parties' respective children's books:

> "The precise factors evaluated for literary works do not readily apply to art works. Rather, a court looks to the similarity of the objective details in appearance. See, **McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 319 (9th Cir.1987)** (citing *Litchfield,* 736 F.2d at 1356) ("In *Litchfield,* we stated that the similarity of ideas prong may be shown by focusing on the similarities in the objective details of the works. Concluding that the plates are `confusingly similar in appearance' is tantamount to finding substantial similarities in the objective details of the plates."). ***Although we do not attempt here to provide an exhaustive list of relevant factors for evaluating art work, the subject matter, shapes, colors, materials,***

*and arrangement of the representations may be considered in determining objective similarity in appearance.*" (Emphasis supplied.)

"It is true, of course, that a **combination** of unprotectable elements may qualify for copyright protection. <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1446 (9th Cir.1994); <u>United States v. Hamilton,</u> <u>583 F.2d 448, 451 (9th Cir. 1978) (Kennedy, J.)</u> ('[O]riginality may be found in taking the commonplace and making it into a new combination or arrangement.'). *See also Metcalf,* 294 F.3d at 1074 ('The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection.') (Emphasis original.) *Cavalier. v. Random House*, supra, at 826-27.

In short, recent 9th Circuit cases do not reverse *Roth* and *McCulloch*. On the contrary, **they build on** *Roth* and *McCulloch* so that the "dissection" does not reach its otherwise inevitable conclusion – which would be very palatable to anyone in the knock off business – of making everything beyond protection. In so doing, the Ninth Circuit approach is consistent with the U.S. Supreme Court's holding in *Feist*[3] and with numerous decisions from across the federal circuits.[4]

## **DEFENDANT PRIMARILY RE-HASHES THE INNAPPOSITE AUTHORITY CITED IN ITS SUMMARY JUDGMENT BRIEF**

Defendant's motion relies principally on cases it already cited in the summary judgment proceedings. In the interest of time, Plaintiff will simply point out that

---

[3] See, August 23 Order, Dkt. No. 57- p. 15, 16.
[4] See Plaintiff's Memorandum Re Motion For Partial Summary Judgment, Dkt. No. 25-1 p.15-23

this Court has already reviewed the following cases and found they did not support the position Defendant took in the summary judgment proceedings and its repeat of that position now: *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991); *Allioti v. R. Dakin & Co.* 831 F.2d 898 (9th Cir. 1987); *Apple Computer v. Microsoft* 35 F.3d 898 (9th Cir. 1994); *Data East USA, Inc. v. Epyx, Inc.* 862 F.2d 204 (9th Cir. 1988); *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir. 1971); *Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002); *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003).

## THE ONLY ADDITIONAL CASES DEFENDANT NOW CITES ARE INAPPOSITE

The cases cited by Defendant in its Motion that were not included in its summary judgment briefs are likewise inapposite or of no help to Defendant's novel theory.   Of these, Defendant relies to a large extent to *Harper House, Inc. v. Thomas Nelson, Inc.*, 899 F.2d 197 (9th Cir. 1989) and *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (9th Cir. 2009).

*Harper* involved the copyright protection for a day planner, and its reference to the "separability" test, which is what Defendant now irrelevantly cites, is hardly new law.   The separability test pre-dates Roth and the entire *Swirsky* line of cases, and concerns a completely different issue.   For a visual art graphic or sculptural design on a useful article, copyrightability depends on the work being at least conceptually separable from the useful article.   See *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1077. 1080-1081 (9th Cir. 2003); U.S. Copyright Office, *Compendium II of Copyright Office Practices*, §§505.01-505.05.   That the Shanghai Diamond is conceptually separable from the product on which it appears has nothing to do with the evidentiary basis for analyzing the content: the "best edition" of the work in its "unit of publication." [Discussed *infra*.]   Defendant also cites *Lamps*

1  *Plus, Inc. v. Seattle Lighting Fixture Co*. 345 F.3d 1140 (9th Cir. 1989) which is
2  another inapposite case concerning only the separability test.  Defendant has
3  certainly cited no cases in which the separability test was held as relevant to the
4  analysis of (or evidentiary basis for) substantial similarity and infringement.
5   On the issue relevant in this motion, *Harper* supports Plaintiff's position.
6  The plaintiff in *Harper* had a so-called "compilation of data" copyright, which is
7  analogous to a visual art work "combination" copyright.  The *Harper* court held:
8  "In *Baldwin Cooke*, [383 F.Supp.at 653-653] … both the original and copied
9  planners included artwork in the form of woodcuts at the outer corner of the pages.
10 The court noted that a copyrightable compilation could consist entirely of matter
11 which is not itself copyrightable." [Internal citation omitted.] *Harper* at 203.
12  If Professor Sedlik's testimony is admitted, the quoted statement from *Harper*
13 can and will readily be satisfied.  Professor Sedlik, or the Court itself, can limit
14 consideration of similarities to only protectable aspects of the Shanghai Diamond, if
15 and when Defendant satisfies its burden of proving that particular aspects are non-
16 original and unprotected.  The Court can easily arrange the order of proof at trial,
17 consistent with the assignment of burden of proof on the parties arising from the
18 extrinsic test.  If any dissected and identified element is not proven by Defendant to
19 be unprotected, and the Accused Work has a similar, corresponding element, then
20 extrinsic substantial similarity is established and nothing in Professor Sedlik's
21 conclusion would be legally or factually inaccurate.
22  *Mattel, Inc. v. MGA Entertainment, Inc.,* 616 F.3d 904 (9th Cir. 2009) and
23 *Mattel, Inc. v. MGA Entertainment, Inc.,* 782 F.Supp. 2d 911 (CD Cal. 2011) cited
24 by Defendant, are likewise not on point. The *Mattel* cases do not preclude Plaintiff
25 from establishing a protectable expression of an idea based on a compilation of
26 elements which are protectable.  It simply applies the basic idea-expression
27 dichotomy to particular facts.  This Court has already done that for the Shanghai
28

Diamond, in rejecting Defendant's assertions of the merger/scenes a faire doctrine and holding that there are many possible ways, already seen in the marketplace, to express the idea of the Las Vegas Sign.   Anyone is free to come up with their own take on the Las Vegas Sign and apply it to any type of product.   But the public interest in continuing private investment in new creative works, and fundamental copyright policy, is not served by the kind of bodily appropriation, aka "knock-off," represented by the Accused Work.

*Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222 (C.D. Cal. 1997) and *DeMontijo v. 20th Century Fox Film Corp.*, 40 F.Supp 133, 138 (S.D. Cal. 1941) also do not relate to the instant case.   In those cases ***the similarity only existed at the level of the work's subject matter***.   Here, we have various creative, expressive choices, including the visual effects of glitter fabric, depth, and illumination that are not artistically attributable to the Las Vegas Sign itself and are exactly what visually sets apart the Shanghai Diamond from the myriad designs that share, in one way or another, the same subject matter.

### **PROFESSOR SEDLIK'S EXPERT REPORT PROPERLY APPLIES THE EXTRINSIC TEST OF SUBSTANTIAL SIMILARITY BY DISSECTING THE ELEMENTS OF THE SHANGHAI DIAMOND AND THE ACCUSED WORK, AND OBEJECTIVELY IDENTIFYING THE SIMILARITIES ELEMENT IN ITSELF THE SIMILAR COMBINATION AND ARRANGEMENT OF DESIGN FEATURES**

This Court has already determined that Professor Sedlik's analysis and opinion qualify as expert testimony and that his expert opinion is helpful because he "….utilizes expert knowledge and reliable methods to offer observations beyond the scope of average lay observers."   (Civil Minutes, Dkt. No. 57-8 and 57-9).   In making that determination, the Court noted that:

"For example, he makes specific measurements of the two works in question to assess their components including the 'width of diamond portion of graphic design,' 'diameter of dots at border of diamond,' and 'outer diameter of circles enclosing 'WELCOME.''"  (August 23 Order p. 9, fn. 1; *see also* Sedlik Declaration ¶ 5, Dkt. No. 25-4).

Just like his earlier declaration, Professor Sedlik's expert witness report dated September 23, 2013 carefully dissects and identifies no less than 15 visual elements of objective similarity between the Shanghai Diamond and the Accused Work. Those objective visual elements observed and stated by Professor Sedlik are set forth in the following pertinent statements[5] in the report:

- The subject matter or idea of the flasks is identical
- The abstract sign element in both flasks is an interpretation of and visual reference to, the Actual Las Vegas Sign;
- Both flasks feature the abstract sign element centered on the convex side of the flasks;
- Both flasks omit the words "To," "Fabulous" and "Nevada";
- The stainless steel flasks underlying the glitter fabric are nearly identical;
- The polished stainless steel surface underlying the die cut design on both flasks is identical;
- The purple glitter fabric adhered to the flasks, which creates a solid color field for the overall design, is a prominent aspect of the product design and is identical or near identical in appearance;
- The glitter fabric is adhered to both flasks in the same manner, with the seam in the same location;

---

[5] See *Cavalier v. Random House*, supra, at 822 ("The extrinsic test is an objective comparison of specific expressive elements."

- ***The die-cut methods used to incorporate the abstract sign element into the glitter material is a prominent aspect of the product design, and is identical;***
- ***The reflective effect of the die cut in the material adhered to the flasks creates a three-dimensional, illuminated sign appearance which is a prominent aspect of the product design, and is identical;***
- The positioning, selection, arrangement, integration and combination of the graphic elements comprising the abstract sign element on the flasks employ similar scale;
- The positioning, selection, arrangement, integration and combination of the graphic elements comprising the abstract sign element on the flasks is a prominent aspect of the product design, and is strikingly similar;
- ***Under this extrinsic analysis, the overall positioning, selection, arrangement, integration, layout and combination of all elements identified above makes the overall design of the flasks nearly identical in appearance and strikingly similar[6];***
- The differences between the flasks are trivial or *de minimis* in nature. (Emphasis supplied.)

Professor Sedlik has meticulously and objectively analyzed the incorporated visual effects of the metal reflection, the glitter cover material, the effect of depth and illumination arising from the die cut, and the lettering and contours of the abstract, linear outline used to suggest the Las Vegas Sign and concluded that Flasks 'A' (Plaintiff's) and 'B' (Defendant's) are substantially and, indeed, strikingly similar, with the positioning, selection, arrangement, integration, layout and combination of all key elements." *See* Sedlik Report, p. 20.

---

[6] *See* discussion above at pp. 4-8.

13
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1

Professor Sedlik's testimony is helpful and relevant at trial in that it provides the trier of fact with expert analysis, starting from the correct evidentiary basis, on the fundamental factual question of objective similarity between Plaintiff's flask design and Defendant's flask design and their comparative elements. Professor Sedlik's testimony provides a factual breakdown with clear exhibits and opines on the objective similarities between the two subject designs. Professor Sedlik's appropriate use of the terms "similar," "nearly identical," or "identical" is beyond question. If, at the end, Professor Sedlik has applied the modifiers "substantial" or "striking" to "similar" in a general sense (as he indicates, rather than as a legal conclusion, that is actually appropriate. And even if those modfiers could conceivably overstep the court's obligation to provide instruction on a legal conclusion, the problem is easily remedied, either by preparation of a supplemental report, as Professor Sedlik already reserved the right to do, or by instructing him not to employ those specific adjectives in his testimony. Nothing in the record detracts from the utility to the jury of Professor Sedlik's report and testimony dissecting and comparing the visual features. And of course, Defendant has had every opportunity in this litigation to provide its own expert to provide an alternative dissection of the subject works.

Defendant points out that Professor Sedlik says he is "opining on the flask design in its totality" [Defendant's Motion in Limine #1, p. 4.] But immediately before that statement, the transcript reads:

> "With the clarification that the application of this fabric with the die cut onto the flasks itself forms the design of the product because of the reflective quality of the underlying flask is an integral part of the design. So when you say 'design,' I would not be referring to, let's say, the sign – the abstract stylized sign image considered independently from its application to the flask."

This is precisely how an expert is obliged to proceed in this case. As demonstrated in the summary judgment proceedings, in the following section of this Memorandum, and again in Plaintiff' Motion in Limine #2, the "best edition" of the visual art work applied to 3D objects is the work in its "unit of publication," which as has been demonstrated may include non-copyrightable aspects. So that is the only place Professor Sedlik can begin, but the law is clear that it is for Defendant to establish by satisfactory proof precisely what aspects are non-copyrightable.

Likewise, as to Professor Sedlik's supposedly improper flask-to-flask comparison, this Court has already fully resolved the evidentiary issue against Defendant and in favor of such a comparison, as set forth in the August 23 Order, Dkt. No. 57-10. *See also,* Plaintiff's Motion In Limine #2 and Plaintiff's Opposition to Defendant's Motion In Limine #3.

### UNDER THE COPYRIGHT ACT, PROFESSOR SEDLIK AND THE COURT MUST PRESUME THE ORIGINALITY OF THE SHANGHAI DIAMOND'S EXPRESSIVE ELEMENTS, AS IT IS DEFENDANT'S BURDEN TO PROVE THAT THE EACH ELEMENT – INCLUDING THE *ROTH/SWIRSKY* PROTECTED COMBINATION, ARRANGEMENT OR SELECTION -- IS NOT ORIGINAL

Plaintiff's Copyright Registration #VA 1-826-534 carries with it the statutory presumption that Plaintiff's work is original and its copyright valid. 17 U.S.C. § 410(c). This presumption of validity shifts to Defendant the "burden of proving the invalidity of a registered copyright," meaning that Defendant must show such an overwhelming amount of evidence of non-originality that "reasonably and fair minded men could not" find the design to be original. *Yurman Design, Inc. v. Paj, Inc.*, 262 F.3d 101, 109 (3rd Cir. 2001); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.,* 122 F.3d 1211, 1217 (9th Cir. 1997). Defendant must meet this

Case 2:12-cv-07695-BRO-VBK   Document 88   Filed 01/31/14   Page 16 of 18   Page ID #:1166

burden before it can raise the objection that Professor Sedlik has not "filtered out" the unprotectable content, if any, in the Shanghai Diamond.   The principle is summarized and applied in *Swirsky*:

> "Because *One* has a valid certificate of registration with the copyright office, however, Swirsky is entitled to a presumption of originality. *See* 17 U.S.C. § 410(c) (2003) (citing that presumption of originality extends for five years from date of copyright registration); Three Boys, 212 F.3d at 488-89. ***Carey can overcome this presumption only by demonstrating that Swirsky's chorus is not original***. *See id."  Swirsky*, supra, at 851.

And indeed, this Court ruled that Defendant did not overcome on summary judgment the presumption of validity and originality in Plaintiff's copyright to the Shanghai Diamond.   (August 23 Order, Dkt. No. 57-18 through 20).   Accordingly, unless Defendant disproves originality of the Shanghai Diamond's various elements, ***particularly the combination and selection of all of its elements*** (which Defendant has not even attempted to do at any stage of this litigation) Professor Sedlik's analysis establishes everything that is legally required to reach a finding at trial of extrinsic substantial similarity, regardless of whether he used the modifier "substantial" before "similarity" in the exact legal sense or not.   Until such time as Defendant carries its heavy burden of disproving originality of the Shanghai Diamond's various elements and their combination and selection of its elements, extrinsic substantial similarity is unassailable in this case.

### **PROFESSOR SEDLIK'S USE OF THE TERM "STRIKING SIMILARITY" DOES NOT IN ANY WAY ADVERSELY AFFECT THE USEFULNESS OF HIS REPORT**

Defendant's objection to Professor Sedlik's use of the modifier "striking" before "similarity" is simply moot, since this Court has already found that the two

16
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1

works are, indeed, "strikingly similar." (August 23 Order, Dkt. No. 57-13: "Plaintiff has provided evidence to demonstrate access.   In the alternative, the Court finds that the two flasks are strikingly similar").   Furthermore, striking similarity is established by the total look and feel of the design I n connection with proof of access and is not part of the substantial similarity test for infringement, so no "filtering" is needed for Professor Sedlik to use that word in a general sense or a legal sense.

## PROFESSOR SEDLIK'S DEPOSITION TRANSCRIPT IS NOT YET FINAL AND THUS THE MOTION TO EXCLUDE HIS TESTIMONY BASED ON HIS DEPOSITION IS PREMATURE

Defendant took Professor Sedlik's deposition on November 5, 2013. Pursuant to the federal rules, a witness has 30 days after being notified by the officer that the transcript or recording is available in which to review and make changes to the transcript.   Rule 30, Federal Rules of Civil Procedure.   In this case, Plaintiff understands Professor Sedlik never received notice of the written transcript from the officer.   Therefore, the 30 days for Professor Sedlik's review has yet to begin, much less concluded.   Here, it is possible Professor Sedlik would restate his choice of words in one or two of the sentences Defendant references and on which it bases its entire Motion in Limine # 1.   As such, is motion is premature and must be denied for that reason as well.

## CONCLUSION

So again Defendant tries to put the cart before the horse.   The development of dissection and filtration under the extrinsic test expressly requires that the court ***not*** disregard or filter out any original combination of the kind protected in *Roth*, *McCulloch, Swirsky, Three Boys* and numerous other cases inside and outside the Ninth Circuit.   And the necessary evidentiary starting point is the entire "unit of

1  publication" of the "best edition."

2  Defendant has yet to introduce evidence to overcome the statutory
3  presumption that *all* of the Shanghai Diamond elements dissected and identified by
4  Professor Sedlik (including the combination element) are, in fact, unoriginal, and
5  accordingly Professor Sedlik's analysis remains an appropriate basis from which the
6  jury could and should find extrinsic substantial similarity.   The only extrinsic
7  analysis so far presented by Defendant is unsworn, incompetent and inadmissible
8  "expert" opinion testimony by Defendant's counsel as to how he personally dissects
9  the subject work.

10  For all of the foregoing reasons, plaintiff Karol Western Corporation
11  respectfully submits that Defendant's Motion in Limine No. 1 be denied in its
12  entirety and that Professor Sedlik be allowed to testify as an expert witness at trial in
13  this matter, including but not limited to, reference to his report.

Dated:   January 31, 2014.                    BRUNSTEN & ASSOCIATES
                                              ISHIMATSU LAW GROUP, P.C

                                              By *Donald J. Brunsten*
                                              Donald J. Brunsten
                                              Attorneys for Plaintiff
                                              KAROL WESTERN CORP.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1