1               UNITED STATES DISTRICT COURT

 2         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3        HONORABLE BEVERLY REID O'CONNELL, U.S. DISTRICT JUDGE

 4

 5   KAROL WESTERN CORP.,                )
                                         )
 6                     Plaintiff,        )
                                         )
 7        vs.                            )          Case No.
                                         )   CV 12-7695 BRO (VBKx)
 8   SMITH NEWS COMPANY, INC.,           )
     dba SMITH NOVELTY COMPANY,          )
 9                                       )
                       Defendants.       )
10   _____)

11

12                     REPORTER'S TRANSCRIPT OF
                          MOTIONS IN LIMINE
13                      MONDAY, MARCH 3, 2014
                             1:39 P.M.
14                     LOS ANGELES, CALIFORNIA

15

16

17

18

19

20

21

22   _____

23           MYRA L. PONCE, CSR 11544, RMR, CRR
              FEDERAL OFFICIAL COURT REPORTER
24           312 NORTH SPRING STREET, ROOM 430
              LOS ANGELES, CALIFORNIA 90012
25                     (213) 894-2305

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

ISHIMATSU LAW GROUP
BY:  BRUCE LESLIE ISHIMATSU
     Attorney at Law
4712 Admiralty Way, Suite 1012
Marina del Rey, California  90292
(310) 200-4060

BRUNSTEN & ASSOCIATES
BY:  DONALD JAMES BRUNSTEN
     Attorney at Law
8605 Santa Monica Boulevard, Suite 32-425
Los Angeles, California  90069
(310) 207-1660

**FOR THE DEFENDANT:**

LAW OFFICES OF H. MICHAEL BRUCKER
BY:  H. MICHAEL BRUCKER
     Attorney at Law
5855 Doyle Street, Suite 110
Emeryville, California  94608
(510) 654-6200

**UNITED STATES DISTRICT COURT**

1              LOS ANGELES, CALIFORNIA; MONDAY, MARCH 3, 2014

2                            1:39 P.M.

3                             -oOo-

4              THE COURTROOM DEPUTY:  Case No. CV 12-7695 BRO,

5    Karol Western Corp. versus Smith News Company, Incorporated.

6         Counsel, state your appearances, please.

7              MR. BRUCKER:  Good afternoon, Your Honor.

8    Michael Brucker appearing on behalf of defendant.

9              MR. BRUNSTEN:  Donald Brunsten and Bruce Ishimatsu

10   appearing on behalf of the plaintiff.

11             THE COURT:  Good afternoon, folks.

12        All right.  We're here for the motions in limine.  I've

13   read and considered the motions in limine.  Basically, we're

14   going to start with Karol Western's Motion in Limine No. 1, the

15   independent creation defense.

16        Let me tell you what my tentative is, and then -- please

17   be seated.  You don't have to stand the entire time.

18        Let me tell you what my tentative is, and then I'll permit

19   the opposing party to be heard.  Please don't repeat your

20   papers.  And then we'll go to any brief questions I have from

21   the movant so -- if I'm going to deny it.

22        With respect to the independent creation defense, here's

23   the problem.  In the motion for summary judgment, there were

24   genuine issues as to independent creation.  So I'm inclined to

25   deny.

```
 1        So let me hear from Karol Western as to why I shouldn't
 2   stand by what I said in the motion for summary judgment,
 3   really.
 4             MR. BRUNSTEN:  Thank you, Your Honor.  Um, it's a
 5   threefold problem.  First, we have the local rule.
 6             THE COURT:  Right.
 7             MR. BRUNSTEN:  And there's a debate between the
 8   parties as to whether or not independent creation is an
 9   affirmative defense.
10        What I want to point out on that is Ninth Circuit Model
11   Jury Instruction 17.0, which was not included in our papers and
12   that's why I'm bringing it up now, is very, very clear and
13   makes it abundantly clear that independent creation is an
14   affirmative defense.  It's the last paragraph of that Model
15   Jury Instruction.  And independent creation is treated just the
16   same as the affirmative defense of fair use or the affirmative
17   defense of abandonment of copyright.
18        So we're going to start with that premise, that it is an
19   affirmative defense.  And then we'll get on to the next part
20   you're talking about, which is what your -- your ruling was in
21   the summary judgment motion.
22             THE COURT:  Okay.  Let's pause a moment.  I'm
23   looking at 17.0.
24             MR. BRUNSTEN:  Last paragraph.
25             THE COURT:  Okay.  Go ahead.
```

1          MR. BRUNSTEN:  So with that said, we think that the

2    local rule applies and it ought to have been pleaded or

3    otherwise be considered waived in this case.

4        So then the next question is:  Is there a good reason in

5    the interest of justice to override what the local rule

6    requires here?  And we think that there is.

7        First of all, because of the admissions that were made by

8    the defendant's witnesses after the summary judgment hearing in

9    which they basically said, look, you know, Mr. Glaser, who

10   clearly had seen our work ahead of time, was the one who made

11   all the important creative choices in the accused work; and

12   number two, the antecedent works, the precursor works that they

13   claim they relied on are just, you know, not even remotely --

14   do not even remotely resemble the accused work.  Other than the

15   fact that they share the -- a representation of the Las Vegas

16   sign, you know, there's no resemblance otherwise.

17       So we think that if that's the evidence that they have and

18   that's the state of the evidence, then there certainly would be

19   a motion for directed verdict or --

20          THE COURT:  Well, we're not even close to that.

21          MR. BRUNSTEN:  Well, I understand.  But I'm just

22   saying that in the interest of streamlining the case, which I

23   heard you mention a moment ago, you know, that this is a --

24          THE COURT:  Judges love that word, "streamline" the

25   case.

1          MR. BRUNSTEN:  Well, I can understand the appeal.

2     But the -- the -- you know, this -- this particular defense,

3     independent creation, is really a dead letter, we think.

4          And then finally, there's the Court's own ruling in the

5     summary judgment motion that found striking similarity between

6     the plaintiff's flask design and the defendant's flask design.

7          THE COURT:  Yeah.  But to be fair, I did find issues

8     as to independent creation.

9          MR. BRUNSTEN:  Right.  But the point I was going to

10     make is that reading the cases on striking similarity, what

11     they say and what *Nimmer* also says is that, by definition,

12     "striking similarity" means that -- that it is illogical --

13          THE COURT:  Right.

14          MR. BRUNSTEN:  -- to conclude that they were

15     independently created.

16          THE COURT:  Right.  I understand.

17          MR. BRUNSTEN:  So there's a legal reason, there's a

18     factual reason, and then there's the local rules.  So that's

19     the basis for our argument.

20          THE COURT:  Thank you.

21          Let me -- let me hear from the defense on this, Smith News

22     Company, as to -- I looked at 17.0.  And it does -- and

23     counsel's right, it does say "Defenses to infringement," and

24     then it goes on to say "independently created."  So let's -- if

25     you could address that, please, and then tell me why I should

1    let you present evidence.

2              MR. BRUCKER:  Well, first of all, I'd point out that

3    the Appendix A to the Court's local rules says that you should

4    only identify an affirmative defense in those matters which

5    defendant bears the burden of proof and are matters that would

6    defeat plaintiff's claim even if plaintiff established the

7    elements of the claim.

8        Now, if plaintiff established -- and I think what they're

9    talking about is such a thing as the statute of limitations.

10   You could make your case, you could get -- have all the

11   elements of your claim proved.  But if you violated the statute

12   of limitations, that would have to be affirmatively pled.

13             THE COURT:  I see what you're saying.  It doesn't

14   place the burden of proof upon you.  It defeats the elements

15   that the plaintiff has to prove by independent creation, so it

16   would fall under the local rule.

17             MR. BRUCKER:  Right.

18             THE COURT:  Okay.  All right.  I am not persuaded to

19   exclude the evidence.  I'm going to permit -- deny the motion

20   in limine and permit the -- permit evidence of independent

21   creation.  I find that it does not place the burden -- it does

22   say defenses, but it -- it negates the plaintiff's burden of

23   persuasion.  So I'm denying the motion in limine.

24       As to motion -- let's go to Motion in Limine No. 2.  And

25   this really centers on 2-D versus 3-D.  And that centers on,

1    you know, what is this case about?  This is the way I'm viewing

2    this.  It's not about purple flasks with shiny sparkly paper on

3    it.  Okay?  Because a flask is a flask is a flask.  It's about

4    the images on here.

5         And so let me tell you that I am disinclined to let you

6    use the flask.  However, I am not going to require you --

7    because you had a blurry image on the -- that you submitted.

8         Let me ask you a question factually.

9              MR. BRUNSTEN:  Yes.

10             THE COURT:  You have to have some of these sparkly

11   purple things that are not on a flask.

12             MR. BRUNSTEN:  Well, let me take a step back for a

13   second.  We --

14             THE COURT:  Don't take a step back.  Answer my

15   question because it's going to go a lot more smoothly if you

16   answer my question.  Because I am disinclined to permit a 3-D

17   image.  I am inclined to permit a 2-D image, but I am inclined

18   to permit you to have a representation.

19             MR. BRUNSTEN:  Well, what we could do, the way it

20   would -- and this is consistent with the -- the supplemental --

21   or amplification documents that we filed -- is if you took it

22   off the flask, you would still have a reflective metal backing

23   behind it.  That's how we described the work in our -- in our

24   amplification.  And as a matter of fact, if you for a second --

25   give me the flask -- I mean the tumbler.

1       Your Honor, this case also involves the same design

2   applied to tumblers.  Now, the tumbler is actually the --

3   behind -- behind the glitter fabric -- I could show you this

4   too.  We haven't put it into evidence.  If you'd like to see it

5   up close, that might help you.

6       But the -- the -- there's actually a layer of metallic

7   fabric.  Because this is a plastic tumbler; it's not metal like

8   the flask.  So there's a layer that's inserted behind the

9   glitter fabric layer in this.  And that's what creates --

10   that's what makes this tumbler look exactly like the metal

11   flask.

12       So you could take off the glitter fabric, you could take

13   off the metallic layer between it, and you would show those two

14   together.  And that's what it would look like off the flask.

15       But the -- in the case of the flask, it's more a matter of

16   conceptual separability, which is what the statute allows, is

17   that the -- the -- you would have to show -- you would have to

18   put a similar metal backing behind it, and then it would just

19   be more or less a rectangular design with the metal backing

20   behind it.  And you could still see that it has the effects of

21   the glitter, the effects of -- of reflection.  Those are the

22   things that make this -- this design sell.  That's why this

23   design is popular.  It's not simply because it's an outline of

24   the Las Vegas sign.  It's because of these other visual effects

25   which are combined together.

```
 1              THE COURT:  But, you know, a tenet to copyright law
 2   is that it's the expression of it.  And the functionality of
 3   the flask -- I mean, it's incredibly prejudicial for a jury to
 4   look at two purple flasks and think because they're flasks,
 5   that it's an infringement.  That's not -- that is not
 6   appropriate for this --
 7              MR. BRUNSTEN:  Well, the Court even said, I believe,
 8   in its summary judgment order that -- that there can be a
 9   flask-to-flask comparison -- that was the basis for the summary
10   judgment order -- and that --
11              THE COURT:  That was not a motion to admit evidence.
12              MR. BRUNSTEN:  Right.
13              THE COURT:  That was --
14              MR. BRUNSTEN:  But what I'm saying is the jury can
15   be instructed that -- and this is the way it was done in all
16   the -- the pictures of all the other cases we cited, the
17   Coquico case, Collezione Europa, the Knitwaves case, the
18   City Merchandise case, they were all looked -- they all looked
19   like -- the City Merchandise case was the comparison of the
20   piggy bank with the piggy bank.  And it shows the designs on
21   it.  So that's -- that's how it's always been done.
22         And the defendant has not shown us ever, ever a case which
23   endorses the idea of you take it apart, you know, in order
24   to -- to -- because we don't -- what 17 U.S.C. 101 says is not
25   that the -- that the -- that the design can't be on a useful
```

```
 1   article.  It says that the non- -- there has to be either

 2   physical or conceptual separability from the non- -- from the

 3   utilitarian features of the useful art.  And the reflectivity

 4   of the metal is not a utilitarian feature of the flask.

 5        And it's -- in any event, the design is conceptually

 6   separate, much like the Collezione Europa case which also

 7   involved metal furniture, designs applied to metal furniture,

 8   which the Court said can be conceptually separable --

 9             THE REPORTER:  Excuse me.  Please slow down.

10             MR. BRUNSTEN:  I'm sorry.  They didn't have to

11   rebuild the furniture or remake the furniture or invent a new

12   version of the furniture.  They just looked at the furniture.

13   And they could see that conceptually that they are separable,

14   and that is enough to meet that test.

15        And it is -- you know, the jury can certainly be

16   instructed to not consider the flask as a flask as part of

17   the -- of the claimed work.  But that still -- they still need

18   to be able to see what makes this design -- what it looks like

19   in real life because that's the way the design was made.

20             THE COURT:  All right.  Well, let me hear from the

21   defense on this.

22             MR. BRUCKER:  Am I correct, Your Honor, what you're

23   suggesting is that plaintiff produce something such as this,

24   which was Exhibit 61 that's been lodged with you, and that this

25   be the comparison that the jury use to determine if there's
```

1    been copyright infringement?

2              THE COURT:  That is what I was saying.

3              MR. BRUCKER:  And I would say -- over the weekend, I

4    happened to run into an Eleventh Circuit case.  It is not

5    reported, but it is extremely on point in which the Court makes

6    the analysis.  And I believe their -- I believe their method of

7    determining separability is one that is very workable,

8    especially in this case.

9         And the case basically says -- it had to do with a light

10   fixture.  And it says if you take everything away from the work

11   that is required for the function of the -- of the useful

12   article, in this case would be the flask, what you have left is

13   what is subject to copyright.  And it went on to say that the

14   plaintiff there asked that the -- that once it was determined

15   there were features that were separable, the plaintiff said,

16   "But we want you to look at it in its entirety, in" -- "as a

17   whole, not just the part you've separated out."  And the Court

18   said we can't do that.

19             THE COURT:  Well, what about plaintiff's argument

20   that the jury could be instructed to not regard the items --

21   don't look at them as flasks, but look at them as the entire

22   representation of the expression?

23             MR. BRUCKER:  It seems to me, Your Honor, that it's

24   like unringing a bell.  I mean, why do they have to see it on

25   the flask if, in fact, what's going to be determined by the

**UNITED STATES DISTRICT COURT**

1    jury is whether or not this was copied (indicating).

2             THE COURT:  And you're referring to Exhibit 61 in

3    your right hand.

4             MR. BRUCKER:  Yes.  It seems they can't help but

5    think, well, gee, they look alike.  No one's going to deny that

6    these two flasks look alike.  The issue is whether or not

7    there's something copyrightable about these flasks or the

8    images on the flasks that have been, in fact, copied as opposed

9    to having been independently created.

10            THE COURT:  All right.  I'm going to look at the

11   Eleventh Circuit case.  I'm going to take that one under

12   submission.  You'll hear from me on that.

13            MR. BRUNSTEN:  May I just give one --

14            THE COURT:  Here's the way --

15            MR. BRUNSTEN:  -- one ten-second observation on

16   that, please, Your Honor, and then I'm happy to move on.  My

17   only --

18            THE COURT:  Ten seconds and -- let me just explain

19   to you folks something.  I have rules for a reason.  One, don't

20   talk over me, which you've done twice now.  Two, I'm going to

21   give you time limits.  I expect you to adhere to them.  And

22   another ten seconds here and another ten seconds there comes

23   another day.

24        So if you can't follow the rules, we're not going to

25   have -- we're not going to be able to get along very well.

 1          MR. BRUNSTEN:  Very well, Your Honor.

 2          THE COURT:  Okay.

 3          MR. BRUNSTEN:  May I speak, or should I wait?

 4          THE COURT:  I'm going to take it under submission.

 5   Okay?  This is not a ping pong match.  You all have submitted a

 6   lot of written materials.  There are ten motions in limine I've

 7   got to get through, and then I've got ten more right after you.

 8   So if it's not in your papers, it should have been.  Okay?

 9       All right.  Let's go to 3.  Let me tell you what is going

10   on in 3.  I don't have a proffer as to what this witness is

11   going to say.  And I am not prepared -- without knowing what

12   this witness is going to say specifically, I'm not going to

13   rule on it.  I cannot rule in a vacuum, and I have no idea as

14   to -- first of all, substantial similarity, I'm disinclined to

15   let anybody testify to.  But industry standards, I don't know

16   what you're talking about.

17       So maybe the defense can help with that, provide some sort

18   of proffer.  But at this point, I don't have enough information

19   to rule.

20          MR. BRUNSTEN:  May I be heard on that one,

21   Your Honor?

22          THE COURT:  Well, I said I want to hear from the

23   defense first.  I want to hear -- the defense is presenting

24   expert opinions, so presumably they know what someone's going

25   to say.

 1              MR. BRUCKER:  Your Honor, we have never offered any

 2    expert testimony.  We have not named an expert.

 3              THE COURT:  Well, what is Mr. Glaser or

 4    Mr. Urbiztondo -- are they going to testify about industry

 5    standards?

 6              MR. BRUCKER:  Not that I know of.  They're going to

 7    testify about what they know and what they've seen.

 8              THE COURT:  Okay.  Then the motion in limine is

 9    granted.  There will be no evidence regarding substantial

10    similarity or industry standards.  Granted.

11              MR. BRUCKER:  I assume that's from anybody?

12              THE COURT:  Well, I don't know where the other

13    motion is -- if it -- we'll get to that motion in limine.

14              MR. BRUNSTEN:  There's another half to that motion.

15    I appreciate what Your Honor just said with respect to the

16    industry standards question.

17         The other -- the other aspect of that motion was that

18    because the defendant has not provided an expert witness,

19    they -- we feel that they should not be able to offer into

20    evidence through counsel's argument in closing -- you know,

21    counsel's argument or closing argument in the case their

22    alternative dissection of the work.

23         We have Professor Sedlik's dissection, which they can go

24    out and take his deposition, they can cross-examine him on

25    that.  We feel that they -- they can't just not have a witness

1  and then just put forth a dissection of the work by way of

2  counsel's own argument, in effect making him the expert

3  witness.

4       So we -- if they have a dissection that's different from

5  ours, an alternate to ours, then they need a witness that we

6  can cross-examine.

7            THE COURT:  No, they don't.  You are conflating two

8  issues.

9       And I'm not prepared to rule about closing argument

10  because, as you well know, Counsel, closing argument has to be

11  based on the evidence presented at trial.  We're not at trial.

12  I've heard nothing.  But they can, through their

13  cross-examination of your expert, establish certain facts that

14  they can then argue to the jury as a reasonable inference.  I

15  don't know what that's going to be.

16       So I am not precluding any closing argument at this time.

17  If you wish to renew it at the close of evidence, I will

18  consider it then.  But I simply -- you're asking me to offer an

19  opinion, and I refuse to do it.

20       But the rules of evidence permit closing argument to be

21  based on reasonable inferences from the -- from the evidence

22  presented.  I could agree with you wholeheartedly depending

23  upon what the evidence presented is.  I just don't know what

24  it's going to be.

25            MR. BRUNSTEN:  Well, we've seen in their moving

1  papers that they claim -- they've done their own dissection,

2  counsel for the defense has done his own dissection in which he

3  says that the design consists of only four elements.  Okay.

4      So that's my point, is that if he's going to try and make

5  that his own argument based on his own dissection, we need a

6  witness to cross-examine.  Whatever comments they want to make

7  about Professor Sedlik's analysis is fine.  We understand --

8          THE COURT:  You're not -- I'm not at that point

9  where I can --

10         MR. BRUNSTEN:  I understand.

11         THE COURT:  I can't rule on that because there's

12 been absolutely no evidence admitted yet.  Once all the

13 evidence is admitted, then I will consider that argument.

14         MR. BRUNSTEN:  Thank you.

15         THE COURT:  Okay.  So let's go to the next motion

16 in limine.

17     Karol Western is moving to preclude reference to the idea

18 or subject matter of the Shanghai Diamond.

19     Okay.  I am inclined to deny this.  So why don't you tell

20 me why I should grant this motion.

21         MR. BRUNSTEN:  Well, simply because the -- the

22 idea -- the cases talk in visual artworks more about there

23 being a subject matter than an idea.  And so the -- the

24 dichotomy involved is the subject matter versus the expression

25 dichotomy.

1    THE COURT:  Well, and I -- you know, a die cut image

2  of the sign is an idea.

3    MR. BRUNSTEN:  No.  We think that that's -- that the

4  die cut aspect of that is -- represents a statement about part

5  of how -- the idea of putting the sign on the flask, to use the

6  Court's statement of it in the summary judgment order, that

7  the -- the idea is the sign on a flask.  How you do it, whether

8  you use die cut, whether you use neon light, whether you use

9  paint, whether you use -- those are all expressive choices,

10  not -- not the idea.  That's -- that's -- and that's not

11  even -- and it's inconsistent with what the defendant itself

12  said before when it defined the idea for the purposes of the

13  summary judgment motion.

14    So I don't know why the idea would be more inclusive and

15  include more expressive elements now when all parties looked at

16  it differently before because nothing has changed.  And, you

17  know, the -- the how to do something is the expressive side of

18  the dichotomy.  What's the subject matter, that's the

19  unprotected subject matter or idea.  And that's why I say we --

20  when you call it the subject matter, it becomes more clear as

21  to what -- what -- you know, where the dividing line it.

22    THE COURT:  Let's hear from the defense on this.

23  The plaintiff makes a good point, that the subject matter or

24  idea is the Las Vegas sign, but the expression is the glittery

25  paper on the flask on a cup.  So talk to me about that, please.

1          MR. BRUCKER:  Well, I think I --

2          THE COURT:  Because a die cut image of the sign, as

3    plaintiff argues to me, is a -- it conflates two different

4    portions.  One is the idea of the sign, and the expression is

5    the die cut image -- die cut image of the sign in -- on

6    glittery paper backed by reflective backing, which is an

7    expression.

8          MR. BRUCKER:  Well, that kind of puts the rabbit in

9    the hat.  The question is -- because --

10         THE COURT:  I don't understand the rabbit going in

11   the hat.  So --

12         MR. BRUCKER:  Well, it means the -- the definition

13   subsumes the question.  In -- in the cases that we've cited,

14   you'll see that the Court defines the idea in quite detail --

15   in great detail.  And the reason for that is because they're --

16   the public policy behind copyright law is not to grant 75-year

17   monopolies on things that should be open for others to

18   interpret and to -- and to bring forth in a different

19   expression.

20       The -- the use of a die cut is a common practice.  And all

21   of -- the next thing they'll want to do is get a copyright on

22   something that uses paint.  I mean, that's a choice, to use

23   paint or to use ink or to use a decal.

24       But in this case, what you -- what you see is what there

25   is, and that is it's a representation of the sign, executed in

1    a die cut -- with a die cut method to create this image.  And

2    that's what the -- that's the description of the image.  That's

3    how you describe the image.  This is not an image of ink.  This

4    is not an -- I mean, it could be.  The same image could be

5    created in ink.  It would be the same image.

6              THE COURT:  Why is not -- the execution part of the

7    expression not the idea?

8              MR. BRUCKER:  It -- it can be.  You can define it

9    any way you want.  They've asked to define it that the idea was

10   the sign itself, just the sign, not even an expression of the

11   sign.  But the cases typically define -- in -- in *Data East*

12   *versus Epyx*, the Court named 15 elements in -- in describing

13   what the work was.  It was a karate game, and they had --

14             THE COURT:  I'm familiar with it.

15             MR. BRUCKER:  Yes.

16             THE COURT:  The karate game and --

17             MR. BRUCKER:  Yeah.  And in --

18             THE COURT:  But unfortunately, we don't have the

19   video, so I couldn't analyze it myself.  I just have the

20   Court's recitation of the multiple factors.

21             MR. BRUCKER:  In the -- in the *Mattel* case, it

22   wasn't just any doll.  It wasn't a doll.  It was a bratty doll.

23   That was the expression -- that was the -- the genre that it

24   fit into.  It wasn't just any doll.  It was a bratty doll,

25   which incorporates everything that you would expect to see in a

1    doll that's supposed to represent a bratty -- to express that.

2        And the Court went on to say that almost all of the

3    features that the plaintiff relied upon for -- for -- to

4    distinguish it were what you'd expect to find in a bratty doll.

5        So I think that the public policy of limiting copyrights

6    as opposed to patents, design patents, calls for a description

7    of the work as it is.  And that's what this is.

8        I think it should go further.  I think it should be a die

9    cut image of the sign on glitter paper.

10           THE COURT:  That's not going to happen.

11           MR. BRUCKER:  Well --

12           THE COURT:  So -- all right.  I'm going to deny the

13   motion.  The die cut portion of it does not reflect the

14   expression but rather the idea.

15           MR. BRUNSTEN:  Wouldn't that be the -- I mean,

16   you're granting the motion.  That was our argument.

17           THE COURT:  I'm denying the motion.  So I am --

18   excuse me.  I'm denying the motion because I think that -- I

19   agree with the defense argument on this.  And it's not on

20   glitter paper, as they're asking, but -- I'm denying the

21   motion.

22       All right.  Motion in Limine No. 5, Docket 83.  Okay.

23   Evidence or argument of merger or scenes a faire doctrine as

24   not being pled.

25       I am inclined to deny this.  So you can tell me why I

 1    should reverse that tentative.

 2           MR. ISHIMATSU:  Good afternoon, Your Honor.

 3    Bruce Ishimatsu for plaintiff --

 4           THE COURT:  Okay.

 5           MR. ISHIMATSU:  -- on this motion.

 6       Um, I -- I have nothing new to offer other than to

 7    highlight in the papers that -- the issue about whether it's an

 8    affirmative defense.  We think that the rules say that they

 9    are.  It was not pled as such.  If -- if it were sufficient to

10    include this kind of argument, doctrine, defense, whatever you

11    want to call it, there would be no need for affirmative

12    defenses, and we all know that there is.

13       Um, the -- the defendant raised this argument in the

14    summary judgment motion.  The Court found it to be meritless --

15           THE COURT:  Just because I find it meritless doesn't

16    mean that it should be precluded from being presented to a

17    jury.  I mean, I was not persuaded by it in the context of a

18    summary judgment motion.  Okay?

19           MR. ISHIMATSU:  Understood, Your Honor.  But the --

20    the arguments are the same.  So it -- if it has a place in this

21    case, whether it be before the jury or otherwise, we think that

22    the Court has found it otherwise, meaning that it is not

23    appropriate.  And we would urge that that be the logic applied

24    here.

25       The rest is set forth in our papers, Your Honor.  We think

1   that this is a -- the defendant is arguing again that there's

2   been a -- a change in the substantial similarity test under

3   *Roth*.  And I think the Court has decided that that is not the

4   case, certainly in not only the summary judgment motion ruling

5   but the motion for reconsideration denial last week.

6        So we think that that argument by the defendant should be

7   rejected.

8            THE COURT:  All right.  I think the differing

9   contexts of the Court's ruling is dispositive.  I'm going to

10  permit them to raise those issues at trial.

11       All right.  Now, you're seeking to preclude the defendant

12  from introducing evidence of other manufacturer's use on

13  souvenir products of glitter fabric, glitter fabric with die

14  cut, aside from the accused work.

15       I'm inclined to grant that motion on two bases:  401 and

16  403.  This is not a trial about the use of glitter fabric.

17  This is not a trial about die cut.

18       So let's hear from the defense on why I should not grant

19  that motion.

20           MR. BRUCKER:  Your Honor, we would not -- I would

21  not argue against you granting that motion if, in fact, what's

22  going to be tried to the jury is whether or not this die cut

23  image (indicating) of the Las Vegas sign that appears on our

24  goods was copied from their die cut image.  The reason that we

25  would put in the other flasks -- and there are many flasks

1    using die --

2         THE COURT:  I got a lot of them.  You lodged them

3    all.  I have a lot of flasks in chambers.  So I --

4         MR. BRUCKER:  Probably more than you can use in a

5    lifetime.

6       But the -- the reason we wanted to put them in is to make

7    sure the jury understands that glitter paper with a die cut

8    image on a flask is not something that the plaintiff is

9    entitled to own, regardless of what the image is.  If we're

10   going to try this case on the basis that if the plaintiff -- if

11   the defendant persuades the jury that its die cut image of the

12   sign was not copied, that the defendant prevails, then we have

13   no objection to --

14        THE COURT:  Well, that's a very conditional

15   argument.  And here's my ruling:  It's not relevant under 401.

16   And under 403, even if it were relevant, it is undue

17   consumption of time, confusing to the jury.

18      Motion is granted.

19      Okay.  Let's go to the defense motions in limine.

20   Prohibiting the plaintiff's designated expert Mr. Sedlik --

21      Is it Sedlik?

22        MR. ISHIMATSU:  Correct.

23        THE COURT:  Yeah.

24      -- from testifying regarding substantial similarity or

25   striking similarity.  You know, those are legal conclusions of

1  legal import.  Mr. Sedlik is not going to be able to testify as

2  to a legal conclusion.  We all know that.

3      So tell me how it's not a legal conclusion.  Tell me --

4  give me some context for that, please.

5          MR. BRUNSTEN:  Actually, Your Honor, we -- we're

6  fine with having Professor Sedlik instructed not to use the

7  word "substantial similarity" or "striking similarity" as such.

8  He can talk about objective similarity, he can talk about

9  things being nearly identical or identical.  That's -- that's

10 fine.

11         THE COURT:  That's fine.

12         MR. BRUNSTEN:  But the -- but the balance of that

13 Motion in Limine No. 1 was basically to exclude all of his

14 testimony.  Because according to the defendant, *Roth* doesn't

15 matter anymore.

16         THE COURT:  Okay.  All right.  Well -- okay.  So

17 does the defendant wish to be heard on this?  Because I'm not

18 going to permit Mr. Sedlik to testify as to "substantial

19 similarity" or "striking similarity."

20         MR. BRUCKER:  That was our motion, Your Honor.

21         THE COURT:  All right.

22         MR. BRUCKER:  And I consider it granted and thank

23 you.

24         THE COURT:  Granted.

25      Motion in Limine No. 2.  You're seeking an order to

1    preclude evidence of submissions to the Copyright Office after

2    the filing of this action.  Okay.

3         All right.  And this goes back to whether or not it's 2-D

4    or 3-D, I think.  Plaintiff argues -- that's where you argue,

5    if I'm not mistaken, about the reflective quality of the paper,

6    if I'm not mistaken.

7              MR. BRUNSTEN:  No, not exactly, Your Honor.  It's --

8    it's -- we say -- when we -- when we filed the -- the Form CA,

9    which is the amplification, it still says 2-D artwork in

10   glitter fabric with a reflective metal backing.  And that was

11   my objection with -- when you're talking about whether you look

12   on the flask or not.  There is a reflective metal backing even

13   if you just consider it away from the flask.

14             THE COURT:  You can do that with tin foil.

15             MR. BRUNSTEN:  Right.  In this case, it would be

16   stainless steel.  But you're right as far as that goes.

17        Um, but -- um, excuse me, but the amplification says 2-D

18   artwork in glitter fabric -- and by the way, I had asked the

19   Copyright Office if it should be considered 2-D or 3-D because

20   there's a depth effect also that you see from --

21             THE COURT:  Yeah, I understand.

22             MR. BRUNSTEN:  So they said no, the way to approach

23   that is to call it 2-D artwork but to indicate in your form

24   that it includes an effective depth.  So that's one of the

25   items that we listed in the form.  Reflective metal backing

1    including illumination, depth, and other visual effects from

2    die cutting into the glitter fabric.  The artwork is for

3    ornamental application --

4                THE REPORTER:  Excuse me.  Please slow down.

5                MR. BRUNSTEN:  Excuse me.  The artwork is for

6    ornamental application to 3-D useful articles including, but

7    not limited to, flasks and tumblers.  So that's the document,

8    the Form CA that we submitted to the Copyright Office.

9        One other thing on that is defendant has claimed that that

10   form somehow was rejected by the Copyright Office.  That's

11   completely false.  It takes more than a year.  There's no such

12   thing as expedited service on a Form CA.  It can take a year or

13   more to get anything back from the Copyright Office.  And the

14   defendant certainly has not produced a shred of evidence to

15   indicate that there was some action taken by the Copyright

16   Office on this registration.

17       So we're just -- it's there.  We're waiting for it, but --

18   and the Copyright Office has almost no grounds to deny it.

19       The defendant's main point seems to be that what we were

20   doing in filing this Form CA, which has additional pictures and

21   shows off better what the thing looks like, more than that

22   original 2-D photograph, is that we were actually showing some

23   different work.  And I think that we've completely destroyed

24   that argument.

25               THE COURT:  Well, the thing with amplification, my

```
 1    understanding, is that they have immediate legal effect.

 2              MR. BRUNSTEN:  Oh, we agree.

 3              THE COURT:  So waiting for the Copyright Office is

 4    of no moment to my analysis.  So I'm not concerned about that.

 5              MR. BRUNSTEN:  Thank you, Your Honor.

 6              THE COURT:  Let's hear from the defense as to this

 7    issue.

 8              MR. BRUCKER:  First, I'd like to correct,

 9    Your Honor, I didn't say that they were rejected.  I said we

10    have no indication that it was -- it was allowed.

11              THE COURT:  Okay.

12              MR. BRUCKER:  I don't know what this adds to the

13    case.  They filed something with the Copyright Office that

14    stalled there.  What is it evidence of?

15              THE COURT:  Well, first of all, their first picture

16    was what one might consider to be a little blurry.  They're

17    certainly permitted to amplify that.  And my understanding of

18    the law is that amplification has an immediate effect.

19              MR. BRUCKER:  I'm not sure where that -- I'm not

20    familiar with that particular --

21              THE COURT:  Let me cite a case to you, Cosmetic

22    Ideas, Inc., versus IAC/InteractiveCorp, 606 F.3d 612 at 621,

23    Ninth Circuit, 2010.  "We therefore hold that receipt by the

24    Copyright Office of a complete application satisfies the

25    registration requirements."  So the amplification, it's a tool
```

```
 1   used to, you know, provide additional information in the

 2   copyright application which has an immediate effect.

 3             MR. BRUCKER:  Was that an amplification application

 4   in that case?

 5             THE COURT:  I believe it was.

 6        But my question to you is:  What is -- what is the

 7   gravamen of your objection?  It doesn't add anything.  Okay?

 8   So that's a 403 argument that you're making to me.  It's not --

 9             MR. BRUCKER:  Well -- I'm sorry.

10             THE COURT:  It's not helpful, and it's trying to --

11   are you trying to argue that they're seeking to protect

12   different artwork --

13             MR. BRUCKER:  Yes.

14             THE COURT:  -- from the first picture?

15             MR. BRUCKER:  Yes.  They're trying to protect a --

16   what they submitted in the CA form were pictures of the flask,

17   and they -- they want to put the flask before the jury and say

18   that it's been blessed by the Copyright Office, which it hasn't

19   been.  So that it's --

20             THE COURT:  Well, no.  I thought the plaintiff just

21   agreed to a limiting instruction where the flask itself was not

22   the issue and -- did I misapprehend your argument, Counsel?

23             MR. BRUNSTEN:  No.  We completely --

24             THE COURT:  You can stand.  You can stand.

25             MR. BRUNSTEN:  We agree with that point, Your Honor.
```

```
 1   And also, the Copyright Office has instructed us -- again, I
 2   had a -- a long dialogue with one of the copyright examiners.
 3               THE COURT:  I don't care about that.
 4               MR. BRUNSTEN:  But they told us to -- since -- it's
 5   a 2-D artwork for application.  The reason we're even
 6   submitting I.D. material in the first place but not the best
 7   edition of the work is because we fall into that category of
 8   2-D graphic art applied to a useful article.  And they don't
 9   want the best edition.  They only want I.D. material, so the --
10               THE COURT:  Slow down.
11               MR. BRUNSTEN:  -- so the Copyright Office says send
12   in a picture of what it looks like on the article.  So that's
13   why we did it.
14               THE COURT:  Okay.  Let me hear from the defense as
15   to the final word, please.
16               MR. BRUCKER:  Yes.  We have no -- we have no
17   objection to them having a better picture than they sent into
18   the Copyright Office initially.  I don't know why they didn't
19   send a better picture in --
20               THE COURT:  We don't need to go there.  It doesn't
21   matter.
22               MR. BRUCKER:  Okay.  But I'm -- but this CA form --
23   did you have in mind what it is?  Because it's in one of the
24   exhibits.  It has four or five pictures of the flask with
25   different views of the flask.  And we have a letter that we put
```

1    in from the Copyright Office that said a CA form cannot enhance

2    the original submitted identification material.  And I don't

3    think they're going to get this.  I think that the -- the rules

4    of the Copyright Office will reject this.  And --

5              THE COURT:  Well, whatever the Copyright Office --

6    they haven't acted yet, and they haven't rejected it yet.  So

7    I'm going to permit them, subject to a limiting instruction.

8    Okay?

9              MR. BRUCKER:  To -- I'm sorry?

10             THE COURT:  Subject to a limiting instruction.

11             MR. BRUCKER:  That they can put in their

12   application, their CA application?

13             THE COURT:  That they can put in amplification

14   photos.  Okay?  Subject to a limiting instruction.

15             MR. BRUCKER:  Very good.

16             THE COURT:  Okay.  All right.  Let's go to -- all

17   right.  Let's go to the defense motion to exclude evidence of

18   similarity, substantial similarity or striking similarity

19   between any Shanghai Diamond product of plaintiff and any

20   product of the defendant.

21        Okay.  I am inclined to grant this motion and here's why:

22   Because we've talked -- it's not the products.  The problem is

23   it's not the products, it's not the flask, it's not a -- what

24   is it? -- a coffee mug or a -- what do you have? -- a travel

25   mug.

```
 1              MR. BRUNSTEN:  Tumbler.

 2              THE COURT:  It's the expression of the die cut

 3   design.

 4         So let me hear from the defense first, and then I'll hear

 5   a brief response from the plaintiff.  So --

 6              MR. BRUCKER:  It's our motion.

 7              THE COURT:  It's actually your motion.  Let's hear

 8   from the plaintiff first.

 9         The product portion is -- you have an uphill battle here.

10              MR. BRUNSTEN:  Well, as we said, we're not aware of

11   any cases where this has ever been done before, where, because

12   of this, this notion of separability, that you therefore take

13   the thing apart physically and look at it as if -- you know, as

14   if -- in a way that nobody has ever seen it before.  So --

15              THE COURT:  But this is not -- the motion is broader

16   than that.  The -- the defense only wants to limit this to 2-D

17   and you want to limit it back to 3-D.  That goes back to that

18   argument; right?  And it's the expression of the idea, which is

19   protectable.

20              MR. BRUNSTEN:  Right.  We agree, but that -- the

21   latter part, yes.  But the -- I think what we're saying is that

22   the -- it's not exactly 2-D versus 3-D.  I don't think that's

23   really the dividing line here.

24         What it is is the -- the 2-D design looks a certain way in

25   the flesh.  It has a certain appearance.  You can -- you can
```

**UNITED STATES DISTRICT COURT**

1   see what it really looks like.  Even if you just -- even if you

2   agree that the flask is not -- there's no copyright over the

3   flask itself, the physical flask, but the way the design looks

4   is -- it has to be seen in context.

5        And especially that the exhibit -- I think it's Exhibit 61

6   that the defendant offered -- really denudes this of context

7   because they don't even have a reflective metal backing behind

8   it, which is part of what makes this thing the way -- it looked

9   the way it does.

10            THE COURT:  But you can put a reflective metal

11   backing.

12            MR. BRUNSTEN:  Right, which would at least solve

13   part of the problem.

14            THE COURT:  And I even told you how my fifth grade

15   niece would do it.  She put some tin foil on it.

16            MR. BRUNSTEN:  Right.  And in a way, that's not

17   altogether different than what's done on the tumbler.  But our

18   point is that, still, the -- you know, this kind of abstraction

19   from the real thing -- you know, we've seen pictures of

20   dozens -- not dozens but half a dozen cases that -- that --

21   where this is the exact same analysis that we're doing in this

22   case.  Graphic art applied to a 3-D object is not divorced from

23   the object in order to make the comparison.

24        The *L.A. Printex* case from this circuit of only a couple

25   of years ago looks at the design -- you know, a graphic design

1    applied right on the clothing itself.  The *Soptra* case, which

2    we also mentioned, says that it would be error to not consider

3    the way the design looks on the product for which it is

4    intended.

5            THE COURT:  All right.  I'm going to take this one

6    under submission.  I'm going to take a look at those cases.

7        Let's go on to the next motion in limine, again the

8    testimony of -- is he Dr. Sedlik or Mr. Sedlik?

9            MR. BRUNSTEN:  He's a professor.

10           THE COURT:  Professor.

11       All right.  I think I've addressed this issue in the sense

12   of talking about what the professor can or can't say.  But I'm

13   not persuaded that the defense has suffered any prejudice.

14   They took Mr. Sedlik's depo.  It was, it appears to be -- the

15   designation and the report appear to be provided in September

16   of 2013, several weeks tardy, but he was deposed.  You had the

17   opportunity.

18       So why don't I hear from the defense on this one first.

19           MR. BRUCKER:  Well, Your Honor, as our paper said,

20   we were -- primarily brought this motion to underscore the fact

21   that the schedule set by the Court was ignored.

22           THE COURT:  Well, the problem is this -- and,

23   frankly, it's -- you're in a situation where you've been bumped

24   around between a couple of judges.  And my ruling might be

25   different had I had this case from the beginning.  But I expect

1    lawyers to follow deadlines.

2         But you didn't -- you haven't suffered any prejudice.  I'm

3    aware that it was late.  And given the fact that I inherited

4    this case, I'm not at this point going to preclude

5    Professor Sedlik's testimony simply because of that.

6         So that is denied.

7         Okay.  Let me tell you about scheduling.  I'm in trial

8    tomorrow, which I have trials stacked up.  So I -- we are not

9    going to start this case on March 25.  We'll probably be able

10   to start on March 26.  So that's the good news.  It's not much

11   later.

12        I think we're going to be able to get the trial ahead of

13   you done in that time frame.  Okay?  So March 26, folks.  Okay?

14   If there are any -- if the other cases run longer, I'll let you

15   know.  But I think we're going to be able to get my 2008 case

16   to the jury by that time frame.

17        All right.  I've taken two matters under submission.

18   You'll hear from us shortly; but otherwise, be prepared and

19   ready to go on 3/26.

20        Let me tell you how much time you'll have to present your

21   case.  Each side will have four hours to present its case.

22   That does not include argument.  I will give you a time frame

23   for argument when we get a little bit closer for closing

24   argument after I've -- we're deeper into the case.  You'll have

25   half an hour to open, half an hour to open, each side.  That's

UNITED STATES DISTRICT COURT

1    in addition to your four hours.  Okay?  And that does not

2    include jury selection.  And we'll go over jury instructions

3    prior to opening.  Okay?

4        Yes.

5            MR. BRUCKER:  If I may.

6            THE COURT:  Yes.

7            MR. BRUCKER:  Does the four hours include

8    cross-examination?

9            THE COURT:  Yes.  You can spend your four hours

10   doing anything you want.

11           MR. BRUCKER:  Okay.  And we are currently scheduled

12   to meet next week, a week from today --

13           THE COURT:  Right.

14           MR. BRUCKER:  -- for the pretrial conference and the

15   jury instructions.  Is that still on?

16           THE COURT:  Right.  That's why I want to get the

17   jury instructions nailed down and completed before, so you

18   folks can shape your evidence based on the jury instructions.

19   So I still plan on seeing you next week, and we'll go from

20   there.

21       Anything else from either side?  And I'll go over all my

22   procedures next week.

23           MR. BRUNSTEN:  All right.  Thank you, Your Honor.

24           MR. ISHIMATSU:  Thank you.

25           MR. BRUCKER:  Thank you, Your Honor.

1          THE COURT:  All right.  Thank you.

2              (Proceedings concluded at 2:27 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES   )
                         )

4    STATE OF CALIFORNIA     )

5

6          I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7    REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8    CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9    TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15               DATED THIS 16TH DAY OF MARCH, 2014.

16

17

18               /S/ MYRA L. PONCE
               _____

19           MYRA L. PONCE, CSR NO. 11544, RMR, CRR
               FEDERAL OFFICIAL COURT REPORTER

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**