1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAROL WESTERN CORP., | Case No. CV 12-07695 BRO(VBKx) |
| Plaintiff, | **FINDINGS OF FACT AND CONCUSIONS OF LAW AFTER COURT TRIAL** |
| v. | |
| SMITH NEWS COMPANY, INC., | |
| Defendants. | |

Findingsfnl.docx

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL

I.      **INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff Karol Western Corp. ("Plaintiff") designs various categories of gifts and souvenirs, with products in over 400 retail stores around the country. Plaintiff has been selling souvenirs in the Las Vegas market for over 25 years. Defendant Smith News Company, Inc. ("Defendant") also sells and designs various categories of gifts and souvenirs in Las Vegas, competing in the same retail stores as Plaintiff. Plaintiff brings this lawsuit, claiming that Defendant is liable for copyright infringement for manufacturing and selling a flask depicting a die-cut rendition of the Las Vegas sign which is very similar to one of Plaintiff's copyrighted works.

On September 7, 2012, Plaintiff filed a complaint demanding a jury trial which alleged a single count of copyright infringement asking for damages and Defendant's profits pursuant to 17 U.S.C. § 504. (Dkt. No. 1.) On November 5, 2012, Defendant filed an answer. (Dkt. No. 7.) On March 12, 2013, Defendant filed a motion for summary judgment. (Dkt. No. 24.) Additionally, on March 12, 2013, Plaintiff filed a motion for partial summary judgment as to Defendant's alleged copyright infringement. (Dkt. No. 25.)

On July 24, 2013, Plaintiff filed a first amended complaint. (Dkt. No. 51.) On August 8, 2013, Defendant filed an answer. (Dkt. No. 54.) On August 8, 2013, Defendant filed a notice of errata and an amended answer. (Dkt. No. 56.) On August 23, 2013, the Court denied both Plaintiff's motion for partial summary judgment and Defendant's motion for summary judgment. (Dkt. No. 57.) On January 29, 2014,

Defendant filed a motion for reconsideration of its motion for summary judgment. (Dkt. No. 76.) On February 28, 2014, the Court denied Defendant's motion for reconsideration of its motion for summary judgment. (Dkt. No. 135.)

On March 5, 2014, Plaintiff filed a stipulation requesting a nonjury trial and waiving its jury demand. (Dkt. No. 139.) On March 7, 2014, the Court granted Plaintiff's stipulation. (Dkt. No. 140.)   A bench trial in this matter commenced on March 27, 2014 and ended on April 7, 2014.  (Dkt. Nos. 151; 154.)   On April 18, 2014, the parties each filed post-trial briefs.  After consideration of the parties' post-trial briefs, the evidence presented at trial, and oral argument of counsel, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## II.    JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 17 U.S.C. § 101 and 28 U.S.C. §§ 1331, 1338.  Further, venue is proper under 28 U.S.C. § 1391.

## III.    CREDIBILITY DETERMINATIONS

Ninth Circuit Model Jury Instruction 1.11 provides guidance to jurors when assessing credibility.  The factors include:  (1)  the opportunity and ability of the witness to see or hear or know the things testified to;  (2) the witness's memory; (3) the witness's manner while testifying; (4) the witness's interest in the outcome of the

---

[1] Any finding of fact which constitutes a conclusion of law is hereby adopted as a conclusion of law.

Findingsfnl.docx

case and any bias or prejudice; (5) whether other evidence contradicted the witness's testimony; (6) the reasonableness of the witness's testimony in light of all the evidence; and, (7) any other factors that bear on believability.  Ninth Cir. Model Jury Instr. 1.11 (Civil) (2007).  The Court finds these factors helpful in assessing the credibility of the witnesses.  After assessing these factors, the Court finds the testimony detailed below to be credible.

## IV.   FINDINGS OF FACT

### A.   Trial Testimony

#### 1.   Anthony Zoss

Zoss currently serves as the President of Karol Western, Corporation.  Karol Western began in 1959 when it started importing souvenir products based upon its designs.  Its first territory was Las Vegas.  Karol Western sells shot glasses, flasks, ceramics, beach towels, tumblers, magnets, and key chains, including key chains with miniature flasks.  Karol Western products are carried in most of the souvenir shops in Las Vegas.  In 2009, Karol Western launched the "Shanghai Diamond" line, embodied in Exhibit 102, a flask, and Exhibit 117, a travel mug.  Each is sold in multiple colors.  Karol Western has sold approximately 436,000 units in the Shanghai Diamond line, and it ranks approximately number 3 in all sales, totaling approximately $1.8 million.

In seeking copyright protection, Zoss instructed Ileana Salcedo to take a photograph of the Shanghai Diamond design for inclusion in the copyright registration application.  In August 2012, Zoss also instructed that Exhibit 2A, the same photograph, be "zoomed in and cropped."   He attached Exhibit 2A to copyright application.

In early 2012, Zoss received an email informing him of Defendant's

"extremely similar product."  Zoss then instructed an employee to purchase the products, and after examining the UPC code Zoss determined that Smith Novelty distributed the products.  Seventy-nine of those ninety-five stores also purchase products from Karol Western, such as ABC Stores, Hudson News, Marshall Retail Group, among others.  Zoss has seen Exhibit 101 products in ABC Stores, Walgreen's and Bonanza Gifts.  Zoss first went to Bonanza Gifts and saw both Karol Western and Smith Novelty products.  On his second visit, he noticed that Smith Novelty products occupied shelf space previously allocated to Karol Western.

In addition, Zoss prepared Exhibit 140C, containing additional sales figures for Smith Novelty's sales of the design created by Urbiztondo.  Zoss determined that ninety-five stores sell products from Smith Novelty.  Exhibit 145 accurately reflects Karol Western's overall sales of Shanghai Diamond flasks.  Zoss prepared an analysis of lost profits, included in Smith Novelty information in Exhibit 120 and his analysis in Exhibit 140B.  Zoss estimates that Karol Western suffered lost profits of $92,807.60.  Zoss's analysis assumes that for every sale of a Smith Novelty product, that sale is a lost sale to Karol Western.

2.  **Bruce Miller**

Karol Western employs Miller as its Vice President of sales and operations. Miller received his Bachelor of Arts from Stanford University, his Masters in Business Administration, in finance and accounting, from the University of California Los Angeles (UCLA) in 1981 and his Juris Doctor from UCLA in 1981 as well.  After practicing law, Miller worked for a souvenir company, Pinnacle Designs, in 1995 and joined Karol Western in 2008.  Miller is involved in product development.  Miller spends time "coming up with concepts" which he then communicates to Karol Western's art department.  The art department then turns the concepts into artwork used on its products.  Miller developed the Shanghai Diamond design, seeking to create a glittery product.  Miller wanted to create a reverse die cut representation of the Las Vegas sign.   Exhibit 143 represents the reverse die cut

image.  Miller excluded the words "to fabulous Nevada" from the representation because he did not want to "clutter up" the design with the words.  Miller considers the design to the background of stainless steel reflection, the stencil die cut and the glitter paper.  The Shanghai Diamond series is their best selling unit.

### 3.    **Kenneth Glaser, Jr.**

For the last twenty-five years, Glaser has been the President and Chief Executive Officer of Smith Novelty Company.  In 2004 or 2005, Smith Novelty entered the Las Vegas market.  He spends a substantial amount of time in the art department creating new products.  Smith Novelty art department creates 95 to 98 per cent of everything sold by Smith Novelty.  Glaser and Brett Rankin would discuss a sample and make decisions.  The samples are not made available to the art department[2], although the sample might be put in the showroom.

In 2004, Glaser instructed Urbiztondo to create artwork of the Las Vegas sign.  Glaser asked Urbiztondo to create a flask wrapping glitter fabric around the flask and then use a die cut image of the Las Vegas sign, permitting the metal to show through the glitter paper.   Thereafter, Urbiztondo created the drawing, then a "trace" for use by the manufacturer to stamp through the glitter fabric.  In 2005, Smith Novelty created Exhibit 40 which was one of the first designs of the Las Vegas sign.  In 2006, Urbiztondo created another drawing of the Las Vegas sign.  In sum, Exhibits 39 through 43 were created from Exhibit 8.  Ninety-five per cent of the Smith Novelty's products depict the Las Vegas sign.  Glaser never believed that Smith Novelty's design would infringe Karol Western's design.

Most of Smith Novelty's principal accounts also carry Karol Western products.  At times, his sales representatives sent him samples of competitors' products.  Glaser reviewed the expense reports for Mr. Lumen and found only one report seeking reimbursement for the purchase of a competitor's product.   It is

---

[2] The art department consists of one large room with four or five desks in it.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL

Findingsfnl.docx

possible that he bought a sample of competitors' products prior to the creation of Exhibit 101, the Smith Novelty creation.  Prior to November 2011, Glaser estimates that it happened more than 10 times, but less than 30 times.  At the time of Smith Novelty's design, Glaser had seen Karol Western's Shanghai Diamond products, as well as a glitter paper product from RTSI (another competitor).  Glaser went to Las Vegas to investigate and identified the Las Vegas sign as an iconic image appearing on more souvenirs than any other image.   Exhibits 50, 51, 52, 54-58 are products depicting the Las Vegas sign from Smith Novelties' competitors.   Glaser purchased Exhibits 65, 66, 67, 69, 70, 71, 72, 74, 75, 77, 78, 79, 80, 81, 82, reflecting competitors' products, such as tumblers, flasks and key chain flasks.  Glaser purchased Exhibits 69 and 70 from the store M & K, approximately one year ago and six months ago.  Glaser estimates that each item has been on the market for at least two years, that is, around 2010.

Exhibit 85 is a computer spreadsheet of the sales of Smith Novelty's glitter flask products. Glaser does not have a die cut glitter fabric flask that pre-dates Karol Western's Shanghai Diamond.  Karol Western was the first company to produce a die cut glitter fabric flask and Glaser was aware of its product.  Prior to 2010, Smith Novelty never produced a tumbler made with glitter fabric, a die cut or and image of the Las Vegas sign with "Las Vegas" written in baseball script.

### 4.   **Enrico Urbiztondo**

Urbiztondo works for Smith Novelty and has done so for the past fifteen (15) years.  Smith Novelty employs Urbiztondo as a graphic designer.  He creates graphic images which are placed on souvenir items and collaborates with Glaser.  Urbiztondo has never seen any samples or photographs from a Smith Novelty competitor, other than seeing mugs in the office more than two or three times.  Glaser suggests changes and approves Urbiztondo's work.  In 2004, Urbiztondo created Exhibit 105A, from a photograph of the Las Vegas sign an icon in the public domain.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL




The Las Vegas Sign ("The Sign")          Urbiztondo's 2004 Sign Image

Urbiztondo created Exhibits 39-43 between 2004 and 2009.  In November 2010, Urbiztondo created Exhibit 105I at the behest of Glaser.  Specifically, Urbiztondo prepared the design from a previous drawing, Exhibit 8.[3]  Urbiztondo never saw a die cut image of the Las Vegas sign prior to creating his version.  Urbiztondo wanted to keep the Las Vegas sign accurate, yet believes that it is not accurate to depict the sign as a smaller, negative image, containing glitter fabric.  Urbiztondo prepared Exhibit 9 from Exhibit 8, as it is his practice to prepare the designs from a previous drawing.  Exhibit 44 reflects the limitation of using a die cut, as there will be some loss with the letters, creating a line in the letter "O" for example.  One exhibit omits the word "Nevada" and none include the phrase "to fabulous" as is on the original Las Vegas sign; Urbiztondo omitted these words because the die cut process would be more difficult.

Exhibit 61 is the die cut image created by the manufacturer of the Las Vegas sign created by Urbiztondo.  Exhibit 17, the Karol Western creation of the Las Vegas sign, is in a die cut with the letters in multiple pieces.  The process does not require

---

[3] Urbiztondo also created Exhibits 105C, 105D, but none of the representations involve a die cut, glitter fabric or reflective metal.  Urbiztondo believes that is makes a difference when he sees the designs to see the type of product to which they are applied, and the type of material used to create the product.

Findingsfnl.docx

the letters to be broken into multiple pieces except for the "O".  The star shown in Exhibit 17 lacks a portion of the star on the real Las Vegas sign.  The points of the star radiate the same distance; the actual sign has four points of the star half the length of the other four points on the star.  The lower point of the star points at the letter "L" on the "Welcome" sign.   In contrast, Exhibit 101, the Smith Novelty creation, has solid letters, with the exception of the "O", as required by the die cut process.  The support bar on the star is shown in Exhibit 101, consistent with the actual sign.  The points of the star on Exhibit 101 are consistent with the actual sign, that is, four being half the length of the other four.  The lowest point of the star point between the "E" and "L" on the "Welcome" sign.  Exhibit 8, the drawing, shows solid letters (with the exception of "O") consistent with the actual sign.  The star has the same proportions as the actual sign, including a frame around the star.  Like the actual Las Vegas sign, in Exhibit 101 the lowest point of the star points between the "E" and "L" of the "Welcome".  Rankin instructed Urbiztondo to repeat the word "Las Vegas" because of the extra space at the bottom of the design.

### 5.   **Joseph Luman**

Luman first began working for Smith Novelty as a sales representative in late 2005 until 2010.  Luman reported to Glaser and Brett Rankin.  Glaser would visit Luman in Las Vegas approximately two times per year.  During those trips, Glaser would purchase samples of competitors' products.   Glaser instructed Luman to send him (Glaser) any new and interesting products or photographs of those products on an ongoing basis.  Approximately 75 per cent of the products he purchased were designed and sold by Karol Western.  Luman sent Glaser products approximately one time per month.  When Luman travelled to San Francisco, approximately once per year, he saw the samples in the art department.[4]

Luman expressed concerns over similarities in the products to Glaser and

---

[4] The art department is also referred to as the "art room" or "showroom".

Rankin.  However, RTSI and Citron (other competitors) also sell similar items. Luman would also obtain samples of competitors' products for free based upon his relationship with MGM Walgreen's.  Luman saw Exhibit 102 and 117 in stores in late 2009.  The glitter fabric caught his attention, so he purchased two items and sent them to Glaser in San Francisco.   Later, Luman was laid off by Smith Novelty.

### 6.     **Professor Jeffrey Sedlik**

Professor Sedlik studied design at the Art Center College in Pasadena, California, where he received a Bachelor's degree in Fine Arts.  Thereafter, Professor Sedlik worked as a photographer and graphic designer for 28 years, serving as President of the Advertising Photographers of America.  Currently, Professor Sedlik serves as the president of Plus Coalition, a body which creates global standards for design, advertising and publishing.  He has served as a professor at the Art Center College for 20 years and teaches courses on copyright design, business practices and photography.  He also designs posters, books, t-shirts, greeting cards and similar items for his own business, Mason Editions.  His designs involve numerous different types of techniques to create designs, including die cut process.  Professor Sedlik previously has testified as an expert witness in copyright matters, opining about similarity of design and damages, among other things.

Professor Sedlik was asked to analyze and compare the two designs (Exhibits 101 and 102) and render an opinion based upon objective similarity as to the design of the flasks.  Professor Sedlik disregarded the utilitarian components of Exhibit 101 and 102.  Professor Sedlik created Exhibit 144 to compare the two exhibits and isolate the utilitarian aspects of the flasks.  He did not take into account the measurements of the flasks.  Professor Sedlik opined that the two designs exhibit objectively similar visual effects.  The visual effects include the illumination of the Las Vegas sign based upon the die cut and underlying metal background.

With respect to Exhibit 105A, it contains additional elements not present in Exhibit 101.  For example, Exhibit 105A includes "to fabulous" and "Nevada", not

10

included in Exhibit 101.  Exhibit 105A uses different colors and fonts, including vertical lines across the field.  None of these elements are included in Exhibit 101.  Exhibit 101 possesses reflective qualities not present in Exhibit 105A.    Similarly, Exhibit 105C contains elemental differences from Exhibit 101, including depth, illumination, texture, color, and relative sizes of the elements.  Exhibit 105F, the baby bib, is whimsical, using different material, and including the words "to fabulous" and "Nevada" on it.  Conversely, Exhibit 101 is "rather hard and jewel-like".

There are differences between the two designs.  The dots on Exhibit 101, the Smith Novelty flask, are twice the size of the dots on Exhibit 102, the Karol Western flask.  The stars in the designs differ as well, but would not affect his opinion as to similarity.   The stars on Exhibit 16B and 16D differ in width and height.  The ordinal points on Exhibit 16B extend almost as far as the cardinal points.  The ordinal points on Exhibit 16D extend only half as far.  The south-pointing end of the star on Exhibit 16B points at the letter "E" where the south-pointing end of the star on Exhibit 16B points between the letters "E" and "L".  Exhibit 16D frames the star which does not exist on Exhibit 16B.  Neither Exhibit 16B or 16D accurately reflect the design of the actual Las Vegas sign photographed in Exhibit 16A.  The south-pointing end of the star on Exhibit 16A points between the letters "E" and "L".  Exhibit 16A also has a frame around the star.   With respect to Exhibit 14A, the letters are all of one piece, in contrast to Exhibits 14C and 14D, where the letters are not one piece, and in the case of Exhibit 14C, the letters are of two or more separate elements (stencil font).  Exhibit 125C uses stencil font as well.  Stencil font, as used in Exhibits 14C and 15C is a design choice.  Exhibits 15A and 15D contain inverse "v" shapes over the "C" in "Welcome".  The "v" shape is not present in Exhibit 15C.  Professor Sedlik took all of the differences into account including differences in the star, the white around the star, the fonts, and widths.  Exhibits 101 and 102 each incorporate reflective substrate.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL

Findingsfnl.docx



Karol Western's Shanghai Diamond (left), Smith Novelty's Accused Work (right)

### 7. <u>Shelly Mork</u>

Ms. Mork works for Karol Western as it sales representative for Las Vegas and has done so for the last eight years.  She has sold the Shanghai Diamond series products such as Exhibit 102 to 15 or 20 customers.  For example, she has sold Exhibit 102 products to Vegas Gifts, a retail location in Las Vegas.  In January or February of 2012, Mork first saw Exhibit 101, a Smith Novelty flask, at the Vegas Gifts retail location.  Thereafter, her customer stopped ordering Exhibit 102 products.  Vegas Gifts refused to purchase Karol Western flasks for approximately one month to six weeks.  Vegas Gifts later agreed to purchase additional Karol Western flasks because Mork offered the retail customer a "much better price".  Specifically, Karol Western lowered its price from $4.50 to $4.00 per flask.

### 8. <u>Connie Risoli</u>

Ms. Risoli has created between 10 and 20 different renditions of the Las Vegas sign.  She created Exhibit 1 more than 10 years ago and uses it on most of the artwork for Karol Western.

Shanghai Diamond Design-Purple ("Shanghai Diamond")

In the Las Vegas market, approximately 80 per cent of all items sold contain the Las Vegas sign.  In this case, it is possible she built upon her previous design of the Las Vegas sign.  She made design choices in connection with the Shanghai Diamond design, including removing the frame around the star in the sign.  In creating the die cut, she did not attempt to be faithful to the actual Las Vegas sign. With respect to the lettering, she placed the breaks in the lines where they were because she wanted the lettering to "look a certain way."  In creating Exhibit 2A, Risoli placed the dots around the diamond shaped frame to signify light bulbs, a circle surrounding the word "Welcome" and curves on the sides of the diamond shaped frame.

**B.    Exhibits**

Exhibits 2, 8, 9, 14, 15, 16, 17, 18, 30, 39, 40, 41, 42, 43, 44, 46, 50, 51, 52, 54, 55, 56, 57, 58, 60, 61, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 85, 86, 101, 102, 105, 105A-M, 116, 117, 118, 119, 120, 123, 129, 139, 140B, 140C, 140D, 141, 143, 144, and 145A were received into evidence and the Court considered them in reaching its decision.

**V.    CONCLUSIONS OF LAW[5]**

"In bench trials, Fed.R.Civ.P. 52(a) requires a court to 'find the facts specially and state separately its conclusions of law thereon.' " *Vance v. American Hawaii Cruises, Inc.,* 789 F.2d 790, 792 (9th Cir.1986) (quoting Fed. R. Civ. P. 52(a)). "One

---

[5] Any conclusion of law which is determined to also be a finding of fact is so deemed.

13

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL

purpose behind Rule 52(a) is to aid the appellate court's understanding of the basis of the trial court's decision. This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions." *Id.* (citations omitted). Furthermore, the court "is not required to base its findings on each and every fact presented at trial." *Id.* at 792; *see generally Kurth v. Hartford Life & Acc. Ins. Co.*, 845 F. Supp. 2d 1087, 1091 (C.D. Cal. 2012).

To prevail on its claim, Plaintiff must establish, by a preponderance of the evidence: "(1) the plaintiff is the owner of a valid copyright, and (2) the defendant copied original elements from the copyrighted work." Ninth Circuit Model Jury Instr. 17.4 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Copying may be established by showing that the infringer had access to the plaintiff's work and that the copyrighted work and accused work are substantially similar in their protected elements. Ninth Circuit Model Jury Instr. 17.15; *see also Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

### A.    <u>Copyright Ownership</u>

In this case, Plaintiff owns a valid copyright for the Shanghai Diamond design which is displayed on its flask.  Anthony Zoss offered testimony regarding the completion of the copyright application.  The Court admitted Exhibits 129 and 139, a copy of Copyright Registration and Amplification for the Shanghai Diamond No.

VA0001826534.  This establishes *prima facie* evidence of copyrightability. *Transgo, Inc. v. Ajac Transmission Parts, Inc.,* 768 F.2d 1001, 1019 (9th Cir.1985). The Copyright Registration creates a rebuttable presumption of validity. *Creeks U.S.A. Corp. v. Roger Gimbel Accessories*, CV88-2748 (CBM), 1989 WL 168063 (C.D. Cal. Nov. 14, 1989).  Smith Novelty has failed to rebut this presumption.  As a result, the Court finds that Karol Western has shown valid copyright protection.

**B.    Copying**

1.    **Access**

Mr. Glaser testified that he had seen Karol Western's Shanghai Diamond products using glitter paper.  He also instructed Urbiztondo to create a flask wrapped by glitter paper with a die cut design of the image of the Las Vegas sign.  Mr. Luman testified that he sent Karol Western's Shanghai Diamond flask to Glaser in San Francisco because the flask caught his attention.  Luman travelled to San Francisco multiple times a year and saw samples in the art department.  Thus, Karol Western has established, more likely than not, that Smith Novelty had access to the Shanghai Diamond design.

2.    **Substantial Similarity**[6]

In assessing substantial similarity, the Court considers a two-part "extrinsic/intrinsic" test to determine whether Smith Novelty's flask design infringes Karol Western's copyright. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th

---

[6] Given the Court's findings on substantial similarity, it need not address Defendant's independent creation argument.

Cir. 2010) (internal quotations and citation omitted) ("To distinguish between permissible lifting of ideas and impermissible copying of expression, we have developed a two-part extrinsic/intrinsic test.").

The extrinsic test requires a court to identify the similarities between the copyrighted work and challenged work and determine whether those similarities are protectable or unprotectable. *Id.* Then, the unprotectable elements of the copyright are filtered out and the remaining components are considered the protectable expressions of a copyright. *Id.* The protectable components of a copyright inform the scope of the copyright's protection. *Id.* at 913–914 (finding that if there are a wide range of ways to express an idea then the copyright protection is broad and a substantially similar work will infringe, but if there are a limited amount of ways to express an idea the copyright protection is thin and only a virtually identical work will infringe).

"The intrinsic test is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the work." *Cavalier*, 297 F.3d at 822 (internal quotations omitted) (citing *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042 (9th Cir. 1994). Nevertheless, the scope of the copyright's protection found during the extrinsic test stage is applied to the intrinsic test's analysis. *Mattel*, 616 F.3d at 914.

A finding of infringement requires evidence under both the extrinsic and intrinsic test. *See Cavalier*, 297 F.3d at 824 (internal citation omitted) ("A jury could

16

not find copyright infringement because there can be no substantial similarity

without evidence under both the extrinsic and intrinsic tests.").

The Las Vegas Sign is an iconic and in the public domain.



The Sign's noted design elements are:

1. Horizontally stretched diamond shape frame, with the top and bottom angles pointed, while the side angles are rounded surrounding the words "LAS VEGAS";
2. A border of light bulbs around the perimeter of the frame appearing as dots in the photograph;
3. Seven circles extending horizontally across the top of the frame each containing a letter which together form the world "WELCOME";
4. An eight-pointed star located above the left side of the frame;
5. Parallel spaced-apart poles extending above the left side of the frame and having a connecting cross piece at the top;
6. The vertical and horizontal lines of the eight-pointed star intersecting the poles and crosspiece and extending beyond the space that is created by the two poles and the cross piece.

The similarities between the Plaintiff's Shanghai Diamond and Defendant's Flask are apparent when comparing the two side by side:



Karol Western Shanghai Diamond (Left)          Smith Novelty (Right)

17

1. Both use colored glitter paper.
2. Both use stainless steel under the colored glitter paper giving the die-cut images a reflective and contrasting effect.
3. Both depict a die-cut rendition of The Sign missing the words "to," "fabulous," and "Nevada."
4. Both die-cut renditions of The Sign are placed in the center position of the overall design and are relatively the same size.
5. Both die-cut renditions of The Sign have small gaps in the circles enclosing the letters in the word "welcome" due to the requirements of the die-cut process.
6. Both die-cut renditions of The Sign have small gaps in the letter "o" in the word "welcome" due to the requirements of the die-cut process.
7. Both die-cut renditions of The Sign have a small gap at the bottom of their borders.

Of the above listed similarities between the two works, Karol Western's die-cut rendition of The Sign missing the words "to," "fabulous," and "Nevada" and the small gap at the bottom of die-cut rendition of The Sign are the only elements of the Shanghai Diamond design that are protectable.

Importantly, there is only a narrow range of ways to express the idea of The Sign as a die-cut image.[7]  As a result, Plaintiff's copyright for its Shanghai Diamond design only provides it with "thin" protection. *See Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003); *Mattel*, 616 F.3d at 914 ("[F]or example, there are only so many ways to paint a red bouncy ball on blank canvas.").  A "thin" copyright requires virtually identical copying. *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 ("When the range of protectable expression is narrow, the appropriate standard for illicit copying is virtual identity.").

Even though Smith Novelty's rendition of The Sign on its flask is similar to

---

[7] Karol Western cannot claim protection over the die cut process. *See* 17 U.S.C. § 102 ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.").

Findingsfnl.docx
FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL

Plaintiff's rendition of The Sign on its Shanghai Diamond design, the Court cannot conclude that the two are "virtually identical."[8]  Defendant's rendition of The Sign uses a different typeface for its lettering, different borders, different stars, including cardinal and ordinal points, different framing of the star; and a more "accurate" rendition of The Sign than Karol Western's rendition of the Sign.

Even if the Court applied a more favorable test to Plaintiff's Shanghai Diamond design when determining its protectable elements, such as the test the Ninth Circuit applied in *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841 (9th Cir. 2012),[2] it would still reach the same conclusion.  If the Court applied the reasoning provided by the Ninth Circuit in *L.A. Printex* when analyzing the protectable elements of Plaintiff's Shanghai Diamond, it would find that the selection of color and materials, incorporation of those materials in the die-cut rendition of The Sign, and overall appearance of the design are protectable. *See L.A. Printex*, 676 F.3d at 849–50.

However, because there are only a limited amount of ways to express the idea underlying Plaintiff's Shanghai Diamond—The Sign as a die-cut image with glitter

---

[8] The Court disagrees with Professor Sedlik to the extent Professor Sedlik's opinion conflicts with the Court's analysis.

[2] In *L.A. Printex*, the Ninth Circuit determined that a floral fabric design depicting, among other things, open flowers and closed buds in a single bouquet and green colored stems and leaves was entitled to copyright protection. 676 F.3d at 850. Though the individual elements of the design are not protectable on their own, *see Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003), the Ninth Circuit, following the reasoning of the Second Circuit, stated that the "original selection, coordination, and arrangement of such elements is protectable." *L.A. Printex*, 676 F.3d at 850. In reaching that conclusion, the Ninth Circuit largely disregarded the extrinsic test's requirement to filter out the unprotectable elements of a copyright. Specifically, the Ninth Circuit stated that "[t]hough the Second Circuit's ordinary observer and more discerning ordinary observer tests differ somewhat from our two-part extrinsic/intrinsic test for substantial similarity, its reasoning, at least in the context of fabric designs, is persuasive, and it guides our comparison of the designs in this case." *Id*. (internal citations and quotation marks omitted). Moreover, the Ninth Circuit recognized the friction created by the requirement to filter unprotectable elements of a work and some of the teachings of its jurisprudence. *Id*. at 849 (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826–27 (9th Cir. 2002); *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) ("Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection.")).

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL

paper—its copyright would still provide only "thin" protection. *Cf. L.A. Printex*, 676 F.3d at 850–51 (internal citation and quotation marks omitted) ("[T]here are gazillions of ways to combine petals, buds, stems, leaves, and colors in floral designs. . . ."). As a result, nearly virtual identical copying would be required. Thus, even under the more favorable analysis provided in *L.A. Printex*, Plaintiff would still fail to establish Defendant is liable for copyright infringement based upon the differences articulated above.

## VI.  **CONCLUSION**

The limited amount of ways available to express the idea of The Sign as a die-cut image limits the Shanghai Diamond to only "thin" copyright protection. To provide Plaintiff with broad copyright protection over its Shanghai Diamond design would give it a monopoly over the idea of The Sign as a die-cut image. Defendant's Flask is not virtually identical to Plaintiff's design. Therefore, it does not infringe on Plaintiff's Shanghai Diamond copyright. Thus, the Court finds for Defendant.

Defendant is hereby ordered to file a proposed judgment consistent with the Court's findings by September 15, 2014. Any pending motions on the docket are now moot.

Judgment is for Defendant.

**IT IS SO ORDERED.**

Dated:  September 2, 2014

_____
HONORABLE BEVERLY REID O'CONNELL
UNITED STATES DISTRICT COURT JUDGE

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL

Findingsfnl.docx